**Farley Charles MATCHETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71664.

Court of Criminal Appeals of Texas, En Banc.

Nov. 6, 1996.

Rehearing Denied Jan. 22, 1997.

Robert A. Morrow, Brent E. Newton, Houston, for appellant.

Rikke Burke Graber, Assist. District Attorney, Houston, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## *OPINION*

OVERSTREET, Judge.

In February 1993, appellant pled guilty and was convicted under Texas Penal Code § 19.03(a)(2) for a robbery murder committed in July 1991. The jury affirmatively answered the two special issues submitted under Article 37.071(b).[1] Appellant was sentenced to death as mandated by Article 37.071(e). Article 37.071(h) provides direct appeal to this court. Appellant raises thirty-seven points of error. We affirm.

■ In his first point of error appellant alleges that the trial court reversibly erred in failing to comply with Article 26.13.[2] Appellant argues under *Morales v. State*, 872 S.W.2d 753 (Tex.Crim.App.1994), the trial court reversibly erred in failing to admonish him in accordance with Article 26.13(a)(2–4). The State counters that the trial court *substantially complied* with Article 26.13(a) and alternatively, that any error was harmless beyond a reasonable doubt.

According to the record, immediately prior to the commencement of trial, appellant pled

1. All article references are to the Texas Code of Criminal Procedure unless otherwise indicated.

2. Article 26.13 requires that prior to accepting a guilty plea the trial judge admonish the defendant with the following instructions:
    (1) the range of the punishment attached to the offense;
    (2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere;
    (3) the fact that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, the trial court must give its permission to the defendant before he may prosecute an appeal on any matter in the case except for those matters raised by written motions filed prior to trial; and
    (4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

guilty to the offense of capital murder (S.F.XVI, 8–9). Neither party disputes that appellant was admonished about the range of punishment in accordance with Article 26.13(a)(1) or that the trial court failed to admonish appellant according to the requirements of Article 26.13(a)(2—4). Except for the failure of the trial court to admonish appellant in accordance with Article 26.13(a)(2—4), there is no allegation that appellant's guilty plea was anything less than knowing and voluntary.[3]

The State argues that because the admonishments required were "immaterial" in appellant's case, the instructions given substantially complied under Article 26.13(c) with the requirements of Article 26.13(a)(2–4).[4] This understanding of *substantial compliance* was disavowed in *Morales,* 872 S.W.2d at 755. *c.f. Whitten v. State,* 587 S.W.2d 156, 158 (Tex. Crim.App.1979)(here an admonishment was not given but the admonishment was immaterial to the plea, such as where the trial court failed to admonish on the non-binding character of prosecutorial recommendations and no prosecutorial recommendation had been made, there is substantial compliance). Quoting *Hughes v. State,* 833 S.W.2d 137, 140 (Tex.Crim.App.1992), we held in *Morales* that *substantial compliance* "will not be found where the trial court wholly fails to admonish the defendant." *Id.* This holding is in harmony with both the plain meaning[5] of *substantial compliance* and with the internal structure of Article 26.13(c). By contrast, the State's definition of *substantial compliance* contradicts both the plain meaning and structure of Article 26.13(c); it is a

legal fiction concocted "to avoid the plain effect of laws enacted by our Legislature." *Morales* 872 S.W.2d at 756 (Concurring Opinion). In wholly failing to instruct appellant under Article 26.13(a)(2—4), the trial court erred; it was not in substantial compliance as contemplated in Article 26.13(c). *Id.*

■ Appellant argues that *Morales* held that the failure to admonish a defendant under Article 26.13(a) is reversible error not subject to a harm analysis. *Id.* In *Morales* we held:

> The trial judge wholly failed to admonish appellant as required under Article 26.13(a)(4). Therefore a prima facie case [of substantial compliance] was not made and there is no requirement that appellant show harm. *See McAtee, supra,* and *Hughes, supra.*

872 S.W.2d at 755.

Article 26.13(c) states "substantial compliance by the court is sufficient unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." The above cited language in *Morales* clearly stands for the narrow proposition that when there is no *substantial compliance* under Article 26.13(c), the court's failure to comply with Article 26.13(a) is not subject to the *harm analysis* contained in Article 26.13(c). This language does not preclude application of an 81(b)(2) harm analysis to the error under review. *See also Ex Parte Ruben Tovar,* 901 S.W.2d 484 (Tex.Crim.App.1995) and *Ex*

---

**3.** Responding to the trial judge's questions, appellant indicated that he understood he was waiving his right to have the State prove him guilty beyond a reasonable doubt of capital murder, that he had discussed his options with his counsel, that he understood the consequences of his plea, and that he was entering his guilty plea voluntarily. (S.F.XVI, 8–9). The trial court informed appellant that his guilty plea would eliminate the possibility of a lesser included offense, and that the only possible punishments which the jury could assess for capital murder were life imprisonment or the death sentence. (S.F.XVI, 9—11). Acknowledging this, appellant indicated that he still wished to enter a guilty plea. (S.F.XVI, 12).

**4.** Article 26.13(c) states:

> In admonishing the defendant as herein provided, substantial compliance by the court is sufficient unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

**5.** *See Boykin v. State,* 818 S.W.2d 782 (Tex.Crim. App.1991)(Plain meaning of statutes must be respected).

*Parte Mujahid Rashad Akhtab,* 901 S.W.2d 488 (Tex.Crim.App.1995) (Applying a harm analysis to the failure of the trial court to comply with Article 26.13 in habeas cases).

We also disavow any interpretation of *Marin v. State,* 851 S.W.2d 275, 280 –282 (Tex. Crim.App.1993), which suggests that a Rule 81(b)(2) harm analysis is inappropriate when an absolute legislative mandate like Article 26.13(a) is violated.[6] *Marin* can be understood, as appellant argues, to hold that a harm analysis under Rule 81(b)(2) is not appropriate when absolute requirements like those of Article 26.13(a) are violated. The reasoning is that certain types of error by their nature resist meaningful harm analysis and thus are categorically precluded from a harm analysis review.[7] Quoting *Sodipo v. State,* 815 S.W.2d 551 (Tex.Crim.App.1990), *Marin* stated

> [O]ur precedents stand for the proposition that certain kinds of error are such "that it is *extremely* difficult to know whether they might have affected the outcome, or the likelihood that they have influenced the outcome is so strong that it is not worth expending the judicial resources necessary to evaluate the effect of the error in particular cases." *Sodipo,* 815 S.W.2d at 551.

851 S.W.2d at 281. *See also Warmowski v. State,* 853 S.W.2d 575, 578 (Tex.Crim.App. 1993). In so far as *Marin* suggests that, regardless of the facts of a particular case, the application of a Rule 81(b)(2) harm analysis is a waste of judicial resources in whole categories of errors, such as those presently

before us, it is exposed by appellant's case as plainly wrong. A meaningful harmless error analysis is possible even though, according to appellant's broad interpretation of *Marin,* it should not be.

■ That the nature of some legislative mandates and fundamental rights will resist creation of a record from which to meaningfully assess the effects of their violation, does not justify precluding attempts by the State to establish that under the facts of a particular case, the error was *in fact* harmless beyond a reasonable doubt.

> [T]he discrimination required [to conduct a harm analysis] is one of judgment transcending confinement by formula or precise rule. That faculty cannot ever be wholly imprisoned in words, much less upon such a criterion as what are only technical, what substantial rights; . . . What may be technical for one is substantial for another; what minor and unimportant in one setting crucial in another.

*Kotteakos v. United States,* 328 U.S. 750, 761, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557 (1946)(discussing the nature of harm analysis). Rather than foreclose the application of a harm analysis to whole categories of error on grounds that it is theoretically impossible to conduct a meaningful harm analysis, we believe it wiser to allow for a case by case determination of whether in fact a meaningful harm analysis is possible. The presumption that all errors are harmful along with the accompanying burden to rebut the presumption are sufficient to safeguard rights of

---

**6.** Its implementation is independent of the accused's wishes; it is unforfeitable and unwaivable and the trial judge has a duty to carry out the admonishment of Article 26.13 whether appellant asserts the right or not. *See, Marin,* 851 S.W.2d 275 (defining absolute requirements not subject to preservation defaults or harmless error analysis).

**7.** *See also, Ex Parte Ruben Tovar,* 901 S.W.2d 484, 485 (Tex.Crim.App.1995), in which the majority stated in dicta:

> On direct appeal, we have stated that where a trial court wholly fails to comply with the admonishments requirements [sic] of Art. 26.13(a)(4), a reversal of the defendant's con-

viction will follow and that no harm must be shown as a predicate to reversal. *Morales v. State,* 872 S.W.2d 753, 754 (Tex.Crim.App. 1994).

And, in *Ex Parte Mujahid Rashad Akhtab,* 901 S.W.2d 488, 489 n. 3 (Tex.Crim.App.1995), the majority stated in dicta:

> In *Morales,* we held that a conviction must be reversed on direct appeal when the appellate record reflects that there was no admonishment as required by Art. 26.13(a)(4) before the defendant's guilty plea was accepted, and there is no requirement that the defendant show harm.

a truly unreviewable nature.[8] Where the effects of a particular error are not discernable with reasonable certainty, the presumption of harm will, in fact, be unrebutted. *Warmowski*, 853 S.W.2d at 578. Appellant's case does not present such a situation.

In the present case, the trial court erred in failing to admonish appellant according to the dictates of Article 26.13(a)(2) and (3), but because these admonishments are wholly inapplicable to a capital murder case in which the death sentence is sought, this error had absolutely no effect on appellant's conviction or punishment. We can thus conclude beyond a reasonable doubt that the failure to admonish appellant under 26.13(a)(2) and (3) was harmless.

We reach the same conclusion regarding the court's failure to admonish appellant regarding deportation under Article 26.13(a)(4). The record shows that appellant was born on November 19, 1962 in Houston, Texas; therefore, evidencing that appellant is an undeportable citizen of the United States; therefore, the deportation provision was immaterial to appellant's guilty plea. The court's failure to provide appellant with the immaterial admonishment mandated under Article 26.13(a)(4) could not have effected or contributed to his conviction or punishment.[9]

In *Morales v. State*, 872 S.W.2d 753 (Tex. Crim.App.1994), we held that failure to give the article 26.13(a)(4) admonishment was reversible error, even without a showing of harm. The record in *Morales* was completely silent as to appellant's citizenship, however, it is possible to distinguish *Morales* from the present case where there is no question that appellant is a United States citizen. It is suggested, in Judge Meyers' concurring opinion in *Morales*, that in writing article 26.13(a)(4), the Legislature did *not* intend to require defendants pleading guilty or nolo contendere to litigate the issue of their citizenship at trial so that trial judges could determine whether the article 26.13(a)(4) admonishment had to be given. Therefore, the Legislature mandated that all such defendants receive the admonishment. *Morales*, at 755. This interpretation of legislative intent is logical, and the article 26.13(a)(4) admonishment must be given in *every* case.

In *Boykin*, we held that when we interpret a statute, we seek to effectuate the intent of the Legislature which enacted the legislation. "When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Boykin*, at 785.

> There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended we should not apply the language literally. [Citation omitted.] When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way.

*Boykin*, at 785. [Emphasis in original.]

The Legislature in writing article 26.13(a)(4), expressed its intent that a defen-

---

**8.** *See Arnold v. State,* 786 S.W.2d 295, 298 (Tex. Crim.App.1990) (Rule 81(b)(2) is identical to federal harmless error rule which places the burden on beneficiary of error to prove beyond a reasonable doubt that error was harmless); *See also Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Williams v. State,* 851 S.W.2d 282, 285 (Tex.Crim.App.1993); also *see and compare Mayes v. State,* 816 S.W.2d 79, 88 (Tex.Crim.App. 1991)(The State has no "burden of proof" or "burden of persuasion" in the sense that it would if it bore the responsibility to come forth with arguments establishing the harmlessness of an error in order to prevail, but it will indeed suffer reversal on appeal if the reviewing court cannot determine after its examination of the record that an error was harmless beyond a reasonable doubt); *See also, O'Neal v. McAninch,* 513 U.S. 432, ——, 115 S.Ct. 992, 995, 130 L.Ed.2d 947, 952 (1995)(suggesting it is best not to speak of burdens of proofs in context of harmless error analysis).

**9.** We hasten to add that if as in *Morales*, the appellant's status were unknown, or if he were in fact deportable, it would be impossible to determine the effects of the trial court's error, and the presumption of harm would be almost irrebuttable. *See Ex Parte Cervantes,* 762 S.W.2d 577, 578 (Tex.Crim.App.1988)(deportation proceeding actually in progress at time of appeal).

dant, before entering a plea of guilty or nolo contendere, be admonished as to the possible immigration consequences of such a plea (consequences, we add, that are applicable only if the defendant is not a U.S. citizen). Our decision in *Morales* correctly gave due deference to the Legislature's intent by holding it is reversible error to fail to give the admonishment where the record is silent as to defendant's citizenship status.

It would be an absurd result—a result the Legislature could not possibly have intended—to allow a defendant's conviction on a plea of guilty or nolo contendere to be reversed on appeal for failure to give the article 26.13(a)(4) admonishment where the record conclusively shows, as it does in this case, that the defendant is a U.S. citizen and thus the admonishment is legally inapplicable to him. We conclude under the facts of this case that the error was harmless beyond a reasonable doubt. **Appellant's first point of error is overruled.**

■ In his second point, appellant alleges that the trial court erred in taking his guilty plea outside the presence of the jury. Appellant argues that his plea was to the court and not to the jury and as such violated that mandate of Article 27.13 that a guilty plea be made "in open court by the defendant in person." Appellant argues that his failure to plead guilty before the jury violated both explicit and implicit statutory proscriptions against the waiver of a jury trial in capital murder trials in which the death sentence is sought. Arts. 1.13, 1.14, and 37.071.

According to the record, prior to calling in the jury, the trial court arraigned appellant in open court. The trial court asked the State to read the indictment aloud, then asked for appellant's plea, and appellant pled guilty. The jury was then brought in and sworn. The State then read the indictment to the jury, and the trial court informed the jury, without objection, that appellant had knowingly and voluntarily pled guilty to the charges against him. After the State presented its evidence and rested, the trial court instructed the jury to return a verdict finding appellant guilty.

Appellant's plea of guilty in open court and on the record, albeit not to the jury, was sufficient to satisfy Article 27.13. In *Tutor v. State*, 599 S.W.2d 818 (Tex.Crim.App.1980), Tutor pled guilty during an arraignment and when the jury was later empaneled and sworn in, the indictment was read to them and the trial court informed them, without objection from the defense, that Tutor had pled guilty. Tutor asserted on appeal, as appellant does today, that his trial was "rendered null" because he had not personally entered a plea before the jury as required by Article 27.13. We held that the facts presented no violation of Article 27.13. *Id.* Similarly, in *Shields v. State*, 608 S.W.2d 924, 925–27 (Tex.Crim.App.1980) we held that both the spirit and letter of Article 27.13 were satisfied when in a bench trial, Shield's attorney pled guilty for him, but the trial court obtained Shield's personal assurance on the record that the plea was voluntary. In the case at bar, the court's procedure was an unnecessary variation from what is preferable, but appellant's personal plea in open court and on the record was nevertheless sufficient to satisfy Article 27.13 which seeks merely to establish that the accused voluntarily desires to plead guilty.

■ Moreover, nothing in procedure in this case violates the proscriptions against the waiver of a jury trial in a capital murder trial where death is sought. Art. 1.13. Appellant acknowledges that a guilty plea does not violate the prohibitions against waiver of a trial by jury when the death sentence is sought, but he argues that the plea must be made to the jury. While our language has emphasized that a plea of guilty *before a jury* is not a waiver of a jury trial, we have placed no importance on whether the jury was present or absent when the defendant entered his plea of guilty. *Holland v. State*, 761 S.W.2d 307, 313 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). *Williams v. State*, 674 S.W.2d 315, 319 (Tex.Crim.App.1984). The important factor in determining whether appellant has had a jury trial in a capital murder case is that the jury returned a verdict regarding

the special issues under Article 37.071. "The Texas capital murder sentencing scheme requires that a jury determine punishment, regardless of the plea." *Holland,* 761 S.W.2d at 313; *Williams,* 674 S.W.2d at 319. In appellant's case the jury entered a verdict as to his guilt and answered the special issues under Article 37.071; appellant received a jury trial. **Appellant's second point of error is overruled.**

■ Appellant avers in point three that the trial court erred in denying his motion for additional time to investigate evidence of an unadjudicated extraneous offense. Appellant asserts he was unfairly surprised by testimony of the extraneous offense. *Adanandus v. State,* 866 S.W.2d 210, 233 (Tex. Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). According to the record, Marin, an employee of the Harris County jail testified that on November 7, 1991, while appellant was incarcerated awaiting trial, he awoke appellant, who was sleeping in violation of the rules, and that appellant became assaultive and verbally abusive. In pretrial discovery, the State informed appellant it would call Marin to testify about the incident and provided him with a copy of Marin's written disciplinary report regarding the incident. Appellant does not allege that the report was intentionally misleading; Appellant complains that Marin's trial testimony was misleading because it was much more detailed and incriminating than the written incident report and that he was unprepared to effectively cross-examine Marin. These facts do not establish unfair surprise. To the contrary, the State provided appellant not only with full notice of its intent to introduce evidence of the extraneous offense but also with the witness's written account of the incident. The trial court did not abuse its discretion in denying appellant's motion. **Appellant's third point of error is overruled.**

■ Appellant's fourth point alleges that the trial court erred in admitting victim impact evidence during the guilt/innocence phase of his trial. Appellant complains that during the guilt/innocence phase of trial the State called the victim's widow to the stand. Over objection, she testified that she had been married to the victim for twenty-five years, that they had five children, and that the victim was home alone on the night of his murder. She also identified her husband in a photograph of him with friends. She was not cross examined. We agree with the State that this testimony did not constitute victim impact evidence. *See Lane v. State,* 822 S.W.2d 35, 41 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 920, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992)(no victim impact testimony where no evidence given regarding the physical, psychological, or physical effect of the crime on victims, or their families.)

Appellant also asserts that the victim's widow's testimony is character evidence indistinguishable from that which we held impermissible in *Armstrong v. State,* 718 S.W.2d 686, 695 (Tex.Crim.App.1985). We disagree. In *Armstrong* the victim's widow testified that the deceased was a peaceable man. We held that it was error for the State to introduce the issue of the victim's character, stating, "It is never competent for the State in the first instance to prove that the person slain was peaceable and inoffensive." *Id.* In this case the widow's testimony cannot be described as character evidence within the meaning of *Armstrong.*

The trial court did not err in overruling appellant's objections. **Appellant's fourth point of error is overruled.**

■ Appellant contends in point five that the trial court erred in excluding appellant's Exhibit 9. According to the record, appellant attempted to introduce into evidence the written report of a clinical psychologist testifying on his behalf. The State objected, and the court sustained the objection as to pages 3 through 7 of the report but admitted the remainder of the report into evidence as Exhibit 9–A. Under these facts, error, if any, has not been preserved for review. Tex. R.App. Proc. Rule 52(a). Without an objection to the redacted report, we must assume that it was not objectionable to appellant.

**Appellant's fifth point of error is overruled.**

In his sixth point of error, appellant alleges that the trial court violated the separation of powers clause of the Texas Constitution, Article II, § 1. This contention arises from four instructions contained in the punishment charge.[10] Without challenging the substance of the instructions given, appellant argues that the giving of the extra-statutory instructions amounted to judicial amendment of Article 37.071. Appellant argues that this usurpation of the legislative law-making power violated separation of powers principles.

Separation of powers principles are violated when one government department assumes a power that is more "properly attached" to another branch or when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Armadillo Bail Bonds v. State,* 802 S.W.2d 237, 239 (Tex.Crim.App.1990). Appellant presents neither of these situations. The legislature is vested with the lawmaking power of the people in that it alone "may define crimes and prescribe penalties." *State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 104 (Tex.Crim.App.1973). Thus, it is within the legislature's exclusive power to define the elements of capital murder and establish guidelines for deciding when the sentence of death is an appropriate penalty. *See Ex parte Granviel,* 561 S.W.2d 503, 515 (Tex.Crim.App.1978). But, the every day administration of justice, that is, the daily application of the law to particular facts, is at once the duty and an inherent power[11] of the judicial department:

> Judicial power is often said to be the power to adjudicate upon, and protect the

10. Appellant complains of the following instructions:

> You are further instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issues.

> As used in the First Special Issue, the word "deliberately," has a meaning different and distinct from the word "intentionally." The word "deliberately" as used in the first special issue, means a manner of doing an act characterized by or resulting from careful consideration: that is, a conscious decision involving a thought process which embraces more than mere will to engage in the conduct.

> You are further instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the answers to the special issues, if they so aid you.

Appellant also complains of the addition of a mitigation special issue:

> Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed? The jury, however, need not agree on what particular evidence supports an affirmative finding on this Special Issue.

11. By its creation and from its assigned duties, the judiciary derives inherent powers. *The State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994)(inherent power is not secured by any legislative grant or specific constitutional provision, but is necessarily implied to enable the Court to discharge its constitutionally imposed duties). Inherent powers are those powers required for the judiciary to perform its constitutional duties, preserve its jurisdiction, and preserve it independence and integrity as a co-equal department of government. *Id.* Inherent powers of the judiciary is a concept extant since the days of the Inns of Court in common law English jurisprudence and is interwoven into and underlies the doctrine of separation of powers. *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex.1979) (noting that doctrine of inherent power is derived from and underlies separation of powers principles); *Nevitt v. Wilson,* 116 Tex. 29, 285 S.W. 1079, 1083 (1926).

rights and interests of individual citizens and to that end to construe and apply the laws; or as stated in *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933), it is the power of the courts to decide and pronounce judgments and to carry them into effect between persons and parties who bring cases before them for decisions. *Under the judicial power determination is made of what the law is in relation to some existing things already done or happened.*

Interpretive Commentary, (Vernon's Constitution of the State of Texas Ann. Art. V.1993)(emphasis added). The duty to discern what law is applicable under the facts, and the power to instruct a jury accordingly is crucial to the daily administration of justice and to the integrity of the judicial branch of government. It is the duty of the trial court, through various rules of construction and application, to ascertain how the entire body of law works under the particular facts of each case. Thus, Article 37.071 must not be read in isolation as appellant suggests, but in conjunction with all other applicable law whether it be common law, statutory law, or state or federal constitutional law. *See e.g. State v. McPherson,* 851 S.W.2d 846, 850 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993)(addressing powers of court to interpret Article 37.071 in relation to United States Constitutional requirement, requirements of the common law, and Article 37.07).

*See also* Tex. Const. Art. I, Sec. 1.; Tex. Code.Crim. Proc. Articles 1.26 and 1.27, Sec. 1.05, Tex. Penal Code; §§ 311.021 and 311.023, Code Construction Act, Chapter 311, Government Code. The legislature explicitly recognizes the importance of this duty in Article 36.14, which states "... the judge shall, before the argument begins, deliver to the jury, ... a written charge distinctly setting forth the law applicable to the case." *See also* Texas Rules of Civil Procedure, chapter D.

■ But, while a trial court does not violate separation of powers principles merely by giving extra-statutory instructions, it may do so if the instructions in fact infringe upon the legislative power to define offenses or are in direct conflict with legitimate legislative mandate.[12] The trial court's instructions in the instant case neither changed the definition of a capital murder punishable by death nor violated, in word or spirit, any procedure mandated by Article 37.071. It cannot be said that the instructions given amounted to amendment of Article 37.071.

We cannot hold that the trial court violated separation of powers principle. The court did nothing more than its constitutional duty, assuring that appellant was sentenced to death in accordance with the law—the common law, statutory law, and the state and federal constitutional law.[13] **Appellant's sixth point of error is overruled.**

■ In point of error seven, appellant argues that our capital punishment scheme is

---

**12.** We recognize that the constitution explicitly grants the Legislature ultimate authority over judicial "administration," Tex. Const. art. 5, Sec. 31; *Armadillo Bail Bonds,* 802 S.W.2d at 240 citing *Meshell v. State,* 739 S.W.2d 246, 255 (Tex.Crim.App.1987). But this authority does not permit the Legislature to infringe upon the substantive power of the Judicial department, rendering the separation of powers doctrine meaningless "under the guise of establishing 'rules of court.'" *Meshell,* 739 S.W.2d at 255. The extent to which the legislature may interfere with the judicial duty of instructing the jury on the law applicable under the facts, is a complex issue, which fortunately we need not address.

**13.** We recognize that though appellant's point encompasses four instructions, the added mitigation special issue is the core of appellant's complaint. Appellant's argument is that Article

37.071 is unconstitutional because it lacks a vehicle for consideration of mitigating evidence and that the only acceptable remedy is amendment by the legislature. If Article 37.071 were facially flawed, we would be forced to agree with appellant's argument; the trial court could not through instructions resuscitate a legal nullity void from its inception. *See Branch v. Texas,* decided with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, the Texas capital punishment scheme, including Article 37.071 is not facially unconstitutional. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Article 37.071 has only been held unconstitutional *as applied. See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *see also and compare Johnson v. Texas,* 509 U.S. 350, 369–70, 113 S.Ct. 2658, 2670, 125 L.Ed.2d 290 (1993)(Article 37.071 was held not unconstitutional as applied

violative of the Eighth and Fourteenth Amendments to United States Constitution. Appellant argues that *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), in which the United States Supreme Court held that our capital punishment scheme was not violative of the Eighth and Fourteenth Amendments, is no longer controlling because the legislative amendments to Article 37.071 along with the *de facto* amendments created by extra-statutory instructions added by trial courts, have created a patch-work quilt under which capital murder defendants, even those similarly situated are treated arbitrarily and erratically subjected to the death penalty. *See Branch v. Texas,* decided with *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

■ Regarding appellant's Eighth Amendment challenges (cruel and unusual punishment), we note that the scheme under which appellant was tried is the same scheme that was reviewed in *Jurek,* therefore, *Jurek* is directly controlling. Appellant lacks standing to challenge the subsequent amendments made to Article 37.071 which were not applicable to his case. Moreover, the disparate treatment created in our capital punishment scheme by the amendments to Article 37.071 is of a different nature than that which was found unconstitutional in *Furman. Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Appellant presents no Eighth Amendment violation.

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated shall be treated alike" under the law. *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). At the time of appellant's trial, there were two versions of Article 37.071—one applicable to offenses committed prior to September 1, 1991, and the amended version, applicable to offenses committed on or after September 1, 1991. Because those committing the same offense on the same day are subject to the same statutory scheme, they are similarly situated and are similarly treated. *See Dobbert v. Florida,* 432 U.S. 282, 302, 97 S.Ct. 2290, 2302–03, 53 L.Ed.2d 344 (1977). Appellant presents no equal protection violation. **His seventh point of error is overruled.**

In point of error eight, appellant raises the same arguments which he raised in point seven under Article I, Section 13 of the Texas Constitution, prohibiting cruel or unusual punishment, and Article I, Section 3, guaranteeing equal protection of law. In addition to the arguments made under the federal constitution, appellant argues that the protections of the Texas Constitution are broader. Appellant proffers no argument or authority as to the protection offered by the Texas Constitution or how that protection differs from that guaranteed by the federal Constitution. Without such argument or authority appellant's point is inadequately briefed. *Narvaiz v. State,* 840 S.W.2d 415 (Tex.Crim. App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex. Crim.App.1991), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Morehead v. State,* 807 S.W.2d 577, 579 n. 1 (Tex.Crim.App.1991); Tex.R.App. Proc. 74

because facts of case did not require additional mitigation instructions). In finding Article 37.071 unconstitutional as applied, the Supreme Court held that under the particular facts of *Penry* the federal constitution required an additional vehicle by which the jury could consider mitigating evidence, a vehicle which Article 37.071 alone did not provide. Because Article 37.071 does not preclude additional instructions and because it is the trial court's duty and within its powers to instruct the jury regarding all of the applicable law, the flaw in *Penry* was not in Article 37.071 per se, but in the trial court's failure to discern that the United States Constitution required an additional instruction under the facts of the case and to ensure the jury was instructed accordingly. In short, the trial court erred in its duty to ensure the application of the law, all of the law, to the facts. Thus, this particular error in the application of Article 37.071 was within the judiciary's power to correct.

and 210.[14]  **Appellant's eighth point of error is overruled.**

■ In points of error nine, ten, eleven, and twelve appellant complains that the trial court erred in failing to charge the jury with the provocation special issue under Article 37.071(b)(3).  Appellant alleges this violated the mandate of Article 37.071, and violated the cruel and unusual punishment, due process, and *ex post facto* clauses of the United States Constitution.  Article 37.071(b)(3) states

(3) *if raised by the evidence,* whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

The instruction is clearly conditional rather than mandatory.  Moreover, since appellant specifically informed the trial court that he did not desire submission of the provocation issue, he is estopped by the doctrine of invited error from raising this complaint on appeal.  *Tucker v. State,* 771 S.W.2d 523, 534 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989).  **Points nine, ten, eleven and twelve are overruled.**

■ In points of error thirteen and fourteen appellant avers that the amendment adding the mitigation special issue to Article 37.071 violated the federal constitution, and in points fifteen and sixteen, appellant raises identical claims under the state constitution.  Appellant asserts that the failure to assign the burden of proof regarding mitigation to the state, unconstitutionally shifted the burden of proof to him.

Appellant was not tried under the version of Article 37.071 which he challenges; therefore, he lacks standing to make these challenges.  However, since the mitigation special issue submitted to the jury, in fact mimics the one in the legislative amendment and does not assign a burden of proof, we will apply appellant's arguments to the ex-tra-statutory mitigation special issue given in his case.

We have held that a mitigating instruction need not assign a burden of proof.  *Barnes v. State,* 876 S.W.2d 316, 330 (Tex.Crim.App. 1994).  Citing the United States Supreme Court's discussion of the issue, we have rejected the argument that an undefined and unassigned burden of proof creates constitutional infirmity:

In a plurality opinion, the United States Supreme Court in *Walton v. Arizona* affirmatively declined to "adopt as a constitutional imperative a rule that would require the court to consider the mitigating circumstances claimed by a defendant unless the State negated them by a preponderance of the evidence." 497 U.S. 639, at 650, 110 S.Ct. 3047, at 3055, 111 L.Ed.2d 511, at 526 (1990) (plurality opinion).  The plurality in *Walton* further held that it is not unconstitutional to place a burden on the defendant to establish sufficient mitigating circumstances by a preponderance of the evidence.  *Id.* [497] U.S. at 649–651, [110] S.Ct. at 3055–56, [111] L.Ed.2d at 525–27.  Because neither legislation nor constitution places a burden of proof upon the State to negate the existence of mitigating evidence, we refuse to fault the trial court for failing to give the jury such an instruction.

*Id.* Appellant presents nothing which would remove his case from this controlling precedent.  Furthermore, nothing in the Texas Constitution requires a different result.  **Appellant's thirteenth through sixteenth points of error are overruled.**

Points of error seventeen, eighteen, and nineteen voice appellant's contentions, respectively, that the evidence was insufficient to support the jury's answer to the second (dangerousness) and third (mitigation) special issues and that we are unable to meaningfully review the evidence because it cannot be determined upon what evidence the

---

14.  Moreover, to the extent that we have addressed Article I, Section 3, we have rejected arguments that it offers broader protection than the Fourteenth Amendment.  *E.g. Rucker v. State,* 170 Tex.Crim. 487, 342 S.W.2d 325 (1961).

jury based its answers to the special issues. Appellant's arguments betray some misunderstandings regarding sufficiency reviews.

■ Texas has followed the common law in assigning the factfinding function exclusively to juries. Tex. Const. Art. I, § 15 interp. Commentary (Vernon's 1984). We had repeatedly held that the "jurors are the exclusive judges of the facts". *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). That conflicting evidence was introduced does not render evidence insufficient; indeed, the reviewing court must assume that the factfinder resolved conflicts in the evidence in favor of the verdict reached. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App. 1993). A reviewing court is not required to determine whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt. *Id.* Although faced with conflicting inferences, a reviewing court must presume that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution. *Id.* Thus, a reviewing court does not sit as a thirteenth juror reweighing the credibility or weight of evidence, but asks only whether the evidence exists to support the jury's finding. *E.g. Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; *Chambers v. State,* 866 S.W.2d 9, 15 (Tex.Crim.App. 1993), *cert denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). This is what it means when courts assert that evidence is reviewed "in the light most favorable to the verdict." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Chambers,* 866 S.W.2d at 15.

Thus, when appellant argues that we cannot review the sufficiency of the evidence because we cannot ascertain upon what evidence the jury reached its verdict, he presents no grounds for reversal. It is unnecessary to determine upon what specific evidence the jury based its decisions; we look only for sufficient evidence to support the finding. **Appellant's nineteenth point is overruled.**

■ Similarly, appellant's eighteenth point urges us to perform the unnecessary and impossible task of reviewing the sufficiency of the evidence supporting the jury's determination the no evidence exists which mitigates against the imposition of the death penalty in his case. The United States Supreme Court has held that such a review is not required under the Eighth and Fourteenth Amendments to the United States Constitution. *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Hughes v. State,* 897 S.W.2d 285, 294 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995). Moreover, to conduct such a review, we would first have to determine that certain evidence is as a matter of law mitigating, and we would have to presume that the evidence presented was credible, that is, that the jury believed it, and we would have to hold that appellant's "credible mitigating evidence" outweighed the State's evidence against mitigation. We are disinclined to declare any evidence mitigating as a matter of law, or to usurp the jury's role of discerning the credibility and weight of evidence; such a course would violate the long standing principle governing the factfinder and reviewing court's respective functions. We reiterate our prior holdings that a review of the jury's answer to the mitigation issue is inappropriate. *Colella v. State,* 915 S.W.2d 834, 841 (Tex.Crim.App.1995); *Hughes,* 897 S.W.2d at 294. **Appellant's eighteenth point is overruled.**

■ Turning to the sufficiency of the evidence supporting the jury's finding that appellant represents a continuing threat to society, we find the evidence sufficient. In resolving appellant's contention we look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find all of the elements of article 37.071(b)(2) beyond a reasonable doubt. *Flores v. State,* 871 S.W.2d 714, 716 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 926, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994). The jury is entitled to consider all the evidence admitted at both phases of trial when deliberating on the special issues. *Id.* We have previously stated that the circumstances of the offense, if severe enough, may

alone be sufficient to support an affirmative answer to the second special issue. *Id.* We may also look for other evidence to support the jury's finding, such as character evidence, extraneous offenses, or state of mind at the time of the offense. *Id.*

The evidence here established "a most dangerous aberration of character." *Tucker,* 771 S.W.2d at 527. To support his cocaine habit, appellant was willing to brutally kill relatives, friends, and neighbors. Evidence at trial established that in the course of robbing Anderson, a distant relative for whose murder appellant was tried here, appellant brutally bludgeoned and stabbed him to death. During the punishment phase of appellant's trial, the State also introduced appellant's confessions to the equally brutal murder of Melonee Josey, a friend and neighbor. Appellant bludgeoned her to death with a meat tenderizer when she refused to give him money but offered to pay him if he mowed her lawn. The State also introduced appellant's confession of his assault with a hammer upon Ola Mac Williams, a person of advanced years, who refused to pay appellant for lawn work he had not performed. Appellant committed these crimes in the course of a few days and in each case he entered the victim's home as an invited guest. These facts reveal a volatility and brutality evincing a dangerous aberration of character from which a reasonable juror could conclude that appellant possesses a continuing threat to society.[15] **Appellant's seventeenth point of error are overruled.**

■ In point of error twenty, appellant argues that the trial court erred in failing to charge the jury with special-verdict forms listing the elements of the unadjudicated offenses alleged by the State. Appellant acknowledges that normally there is no such requirement, *Spence v. State,* 795 S.W.2d 743, 758–59 (Tex.Crim.App.1990), *cert. de-*

*nied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991), but argues that the special verdict forms became necessary because the trial court instructed the jury not to consider the extraneous offenses unless they believed, beyond a reasonable doubt, that appellant had committed the offense. We disagree. The trial court's instruction does not necessitate a special verdict form and does not distinguish this case from *Spence.* **Point of error twenty is overruled.**

In point twenty-one appellant contends that the trial court erred by instructing the jury that it could "convict" appellant of unadjudicated extraneous offenses. Appellant fails to cite said instruction and we find nothing in the jury charge which amounts to an instruction to convict appellant of extraneous offenses. The instruction to consider the extraneous offenses only if the juror believes appellant committed the offense does not amount to an instruction to convict appellant. Appellant's contention is factually unfounded; it is based on an overwrought interpretation of the record. **Point of error twenty-one is overruled.**

■ In points twenty-two and twenty-three, appellant urges us to overrule well-settled precedent and hold that unadjudicated extraneous offenses are inadmissible during the punishment phase of capital murder trials. In point twenty-four, appellant contends that the court's failure to follow the dictates of Article 37.07 § 3(c) violated the separation of powers provision of the Texas Constitution; he asserts that Article 37.07 § 3(c) forbids admission of unadjudicated extraneous offenses. As appellant acknowledges, this is directly contrary to precedent holding that Article 37.071, and not Article 37.07, controls the punishment phase of a capital murder trial. *Gentry v. State,* 770 S.W.2d 780, 792 (Tex.Crim.App.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104

***

15. *See also Joiner v. State,* 825 S.W.2d 701, 704 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993)(one victim was found to have been stabbed four times in the chest and further received a series of lacerations on her neck. The other victim suffered forty-one stab wounds to her chest, blunt force trauma to her head, lacerations to the head, and, her throat had been slashed); *Cass v. State,* 676 S.W.2d 589, 593 (Tex.Crim.App.1984)(shocking circumstances of the offense established continuing danger to society).

L.Ed.2d 1013 (1989); *Rumbaugh v. State,* 589 S.W.2d 414, 418 (Tex.Crim.App.1979). Finding no novel or compelling argument, we reaffirm our precedent holding that Article 37.071 governs the punishment phase of capital murder trials, and it permits evidence of unadjudicated extraneous offenses. **Points of error twenty-two, twenty-three, and twenty-four are overruled.**

■ In point of error twenty-five appellant complains of the trial court's instructions regarding voluntary intoxication under Sec. 8.04 of the Texas Penal Code. The record reflects that the instruction was given at appellant's request, and appellant failed to object to the instructions given. Because there was no objection, we must assume that the instruction was satisfactory to appellant. Under the doctrine of invited error, appellant is estopped from complaining on grounds that the court gave an instruction which he requested. *Tucker,* 771 S.W.2d at 534. **Point twenty-five is overruled.**

In points of error twenty-six and twenty-seven, appellant alleges that the death sentence is a cruel and unusual punishment violative of both the federal and state constitutions. Appellant "adopts the cogent arguments of Justice Harry Blackmum" in *Callins v. Collins,* 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994). Regarding appellant's federal claims, we hold that *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) is controlling; it upholds the constitutionality of our capital scheme. Moreover, Justice Blackmun's dissenting opinion in *Callins* does not sufficiently address the provisions of the Texas Constitution to adequately brief appellant's arguments that our constitution provides broader protections than the federal constitution; distinct arguments and authorities are required to raise such challenges. *Narvaiz,* 840 S.W.2d 415; *Robinson,* 851 S.W.2d at 222 n. 4; *Morehead,* 807 S.W.2d at 579 n. 1; Tex.R.App. Proc. 74 and 210. **Appellant's twenty-sixth and twenty-seventh points of error are overruled.**

In point of error twenty-eight appellant maintains that the use of the term "probability" in the second special issue unconstitutionally allows the jury to answer that issue on evidence less than beyond a reasonable doubt. This contention was rejected in *Sosa v. State,* 769 S.W.2d 909, 916–17 (Tex.Crim. App.1989). We held in *Sosa* that this argument ignores the language of Article 37.071(c), which requires the jury to answer each of the special issues "beyond a reasonable doubt". **Appellant's point twenty-eight is overruled.**

In his twenty-ninth point of error, appellant claims that Article 37.071(b)(1) is facially invalid because *deliberate* is a lesser culpable mental state then intentional. We have repeatedly held, and the jury was instructed in this case, that *deliberate* is something more than intentional. *See e.g., Farris v. State,* 819 S.W.2d 490, 497 (Tex.Crim.App.1990), *cert. denied,* 503 U.S. 911, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992); *Fearance v. State,* 620 S.W.2d 577, 584 (Tex.Crim.App.1981), *cert. denied,* 454 U.S. 899, 102 S.Ct. 400, 70 L.Ed.2d 215 (1981); *Heckert v. State,* 612 S.W.2d 549, 552 (Tex.Crim.App.1981). **Point twenty-nine is overruled.**

In his thirtieth point of error appellant asserts that the operative terms of Article 37.071 are vague and lead to the unconstitutionally arbitrary application of the death sentence. *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In point of error thirty-two appellant argues that the trial court erred in denying his pretrial motion to set aside the indictment on grounds that the special issues are vague and cannot be understood by jurors. Appellant's arguments amount to an attack on the constitutionality of Article 37.071 on grounds that its terms are too vague and confusing for the average citizen to understand. He ignores *Jurek,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), in which the Supreme Court rejected these arguments against the same version of Article 37.071 applied in his case. *Id.* **Appellant's thirtieth and thirty-second points of error are overruled.**

■ In his thirty-first point of error appellant argues that the trial court erred in

refusing to appoint an expert to study the jury's ability to understand the special issues. Appellant argues under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

In *Ake* the Supreme Court explained that while the State need not "purchase for an indigent defendant all the assistance that his wealthier counterparts," it must provide him the basic tools to present his defense. *Id.* at 77, 105 S.Ct. at 1093. Among the factors which the *Ake* court set forth as relevant to determining when an appointed expert is necessary to provide an indigent defendant with the raw materials integral to the building of an effective defense was the probable value of the expert assistance sought, and the risk of an error if expert assistance were not provided. 470 U.S. at 74, 82–83, 86, 105 S.Ct. at 1091–92, 1095–96, 1097–98. The Supreme Court placed the burden on the defendant to show a compelling need. *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231, (1985). Appellant must offer more than undeveloped assertions that the requested assistance would be beneficial. *Id.*

Reviewing the record, we conclude that appellant failed to establish the threshold showing of need required to invoke the due process concerns reviewed in *Ake*. *See also, Rey v. State*, 897 S.W.2d 333 (Tex.Cr.App. 1995). Appellant failed to establish that the ability of the jury to understand the special issues would be an issue which could not be adequately addressed by his counsel during his trial. Indeed, we reject appellant's bald assertion that scientific expertise is required to determine a juror's or the jury's ability to understand and apply the law. Every lawyer able to ask questions has the expertise required to determine whether a juror understands the law. **Appellant's thirty-first point of error is overruled.**

■ In point of error thirty-three appellant alleges that the trial court erred in failing to grant his motion for new trial on grounds that the jury improperly considered the operation of parole in their deliberations.

Through a complex, backward analysis appellant insists that the jury considered parole in its deliberations; he asserts that since *society* as employed in the second special issue includes both "prison society" and "free society", the jury must have considered the threat to "free society" posed by appellant. Appellant asserts that to assess appellant's threat to "free society," the jurors had to consider appellant's inevitable release into society. Appellant then asserts that to consider his release into free society, the jury had to assume that he would be paroled. Appellant's argument is flawed in its logic and, more importantly, refuted by the evidence.

All of the jurors questioned at the hearing on the motion for a new trial, testified that they had *not* considered parole in their personal deliberations and that the jury had not discussed parole in its deliberation. The jurors were apparently satisfied with considering the threat appellant poses to society, without distinguishing between "free" or "prison" society and without developing a "parole" scenario by which appellant might become a threat to "free society." Put simply, the jurors did not bother to figure out how appellant might become a danger to society; they just concluded that he posed such a danger. With clear evidence contradicting appellant's assertions, we cannot hold the trial court abused its discretion in overruling appellant's motion. **Point thirty-three is overruled.**

■ Appellant complains in his thirty-fourth point that the trial court reversibly erred in refusing to allow him to make an offer of proof during the hearing on his motion for new trial. Appellant mischaracterizes the issue. In reality, appellant complains that the trial court limited his questioning of the jurors.

According to the record, appellant requested and was granted a hearing on his motion for new trial. The hearing was intended to specifically address appellant's allegations of jury misconduct. Appellant alleged that the jury had to have considered parole in its

deliberation of the second special issues. Appellant proposed the same flawed argument that he raises in point of error thirty-three, *supra.* In an attempt to establish that the jury had improperly considered parole, appellant questioned Juror Ellwanger regarding whether in determining the threat posed to society by appellant, Ellwanger had considered appellant's eventual release from prison? The juror answered, "No." Over the State's objection, appellant repeated the question and again received a negative answer. Appellant's counsel then asked "Did you consider that he [appellant] could be paroled?" To which the venireman responded, "no." Appellant then asked whether Ellwanger had considered that appellant could be a threat to "free society." Ellwanger responded "no" and added, that he had not distinguished between "free" and "prison" society, stating "I just thought of it as society." Appellant then attempted to convince Ellwanger, through a series of questions, that he must have in answering the second special issue considered that appellant could be paroled. Asserting that appellant had already established that Ellwanger had not considered parole in answering the special issue, the State objected on grounds that this line of questioning was redundant, confusing, improper, and harassment of the witness. The trial court sustained the State's objection, and when appellant asked to pursue his line of questioning in a bill of exception the trial court denied him the right to further question the juror in this vein.

■ Trial courts may place reasonable limits on cross-examination based on such concerns as harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Moody v. State,* 827 S.W.2d 875, 891 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 839, 113 S.Ct. 119, 121 L.Ed.2d 75

(1992). The trial court did not, under the facts of this case, abuse its discretion. Appellant was allowed to ask various questions critical to his query. When he did not receive the answers which he sought, appellant's questions became repetitious, harassing, and argumentative. The right to enter a bill of exception into the record is not a vehicle by which a party may circumvent a trial court's reasonable limit on harassing questions. The trial court did not abuse its discretion in not allowing appellant to continue his improper line of questioning under the guise of a bill of exception.

Prior to the examination of subsequent jurors, appellant made it clear, in large part to ensure that his intent was reflected in the record, that he proposed to question all of the jurors in the same manner as he had questioned juror Ellwanger. The trial court informed appellant that it would not allow him to pursue the same line of questioning he had attempted with Ellwanger. Appellant asserts that this was a denial of his rights. But, appellant passed each of the remaining jurors without attempting to question them; we, therefore, cannot discern from the record whether the trial court erred. Thus, appellant has failed to preserve any error for our review. Tex.R.App. Proc. 52(a).[16] **Appellant's thirty-fourth point of error is overruled.**

■ In point of error thirty-five, appellant avers that the trial court erred in dismissing veniremember Bolden. In reviewing a trial court's decision to dismiss a venireperson upon a sustained challenge for cause, considerable deference is given to the trial court. *Chambers,* 866 S.W.2d at 22. In reviewing the trial judge's decision to sustain a challenge for cause, we ask whether the totality of the voir dire testimony supports the trial judge's finding "that the prospective

---

**16.** While appellant passed the jurors without questioning, the State called asked each whether they had considered parole in their deliberations. The jurors all answered that the potential of parole had not been a consideration in either their individual or their collective deliberations. We could assume from this that the trial court

intended to properly limit appellant's questioning as it did with Ellwanger. We can also safely say that error if any in limiting appellant's questioning was harmless beyond a reasonable doubt since the record establishes that the jurors did not consider parole, the question appellant intended to ask.

juror is unable to take the requisite oath and follow the law as given by the trial judge," and only if a clear abuse of discretion is demonstrated will the trial judge's decision be reversed. *Id.*

The record of Bolden's voir dire establishes that she had difficulty accepting death as a legitimate penalty. The record suggests that Bolden required extra-ordinary proof to find a defendant guilty of capital murder. The State originally challenged Bolden on these grounds. But, contrary to appellant's assertions, the trial court did not dismiss Bolden on these grounds. In its attempt to evaluate the State's challenge that Bolden could not fulfill her duty as a juror, the trial court questioned Bolden, asking, "You cannot promise then that even if you believe beyond a reasonable doubt the defendant was guilty that you would find him guilty?" She responded: "No, I can't." Bolden repeated this assertion when asked again. On this record, we must conclude that the trial court did not abuse its discretion in dismissing Bolden. *Cooks v. State*, 844 S.W.2d 697, 719 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993)(juror who states that they are unable to take the juror's oath because to do so would potentially place them in the position of having to impose the death penalty is subject to a challenge for cause). **Appellant's thirty-fifth point of error is overruled.**

■ In point of error thirty-six appellant asserts that the trial court erred in not permitting appellant to question the venire regarding the State's burden of proof regarding mitigating evidence. According to the record, appellant requested that the trial court instruct the venire that the State has the burden of proof on the issue of mitigation; naturally the trial court denied this request. Appellant then propounded a series of questions asking if the jurors could hold the State to its burden to negate the existence of mitigating evidence. Appellant objected when the trial court did not permit him to ask these questions.

We have already held that there is no burden of proof regarding mitigating evidence. *See* Point thirteen, *supra*. The trial court did not abuse its discretion in denying appellant's request that it improperly instruct the jury or in prohibiting appellant from misinforming the jurors about the burdens of proof. **Appellant's thirty-sixth point of error is overruled.**

■ In his thirty-seventh and final point of error, appellant argues that the trial court erred in refusing to remind the jury in its punishment instructions that appellant had pled guilty. Appellant argues that he was entitled to this instruction because acceptance of responsibility is mitigating evidence. Appellant presents no convincing argument or authority supporting his contentions; he presents no error. The trial court's mitigation instruction provided a sufficient vehicle by which the jury could consider evidence mitigating; the trial court was not required to argue appellant's case for him. **Point thirty-seven is overruled.**

The judgment of the trial court is affirmed.

McCORMICK, P.J., concurs in the result.

MALONEY and MEYERS, JJ., concur in the result as to points 1 and 2, and otherwise join the opinion.

BAIRD, Judge, concurring.

I disagree with the plurality's treatment of the first point of error.[1]

Immediately prior to trial, appellant pled guilty to the offense of capital murder. The trial judge complied with art. 26.13(a)(1) by informing appellant of the range of punishment. However, the parties agree the trial judge did not admonish appellant pursuant to

---

1. I disagree with the treatment of appellant's eighteenth point of error for the reasons stated in

*Morris v. State*, 940 S.W.2d 610, 616 (Tex.Cr.App. 1996) (Baird, J., dissenting).

art. 26.13(a)(2–4). Appellant contends this was reversible error; the State contends the admonishments required by article 26.13(a)(2–4) were inapplicable in the instant case.

Art. 26.13(a)(2) requires that prior to accepting a plea of guilty, the court shall, *inter alia*, admonish the defendant of the nonbinding effect of the prosecutor's recommendation as to punishment, if such a recommendation exists. Similarly, subsection (3) requires the trial judge admonish the defendant of his appellate rights *if* the trial judge follows the prosecutor's punishment recommendation. In *McCravy v. State*, 642 S.W.2d 450 (Tex.Cr.App.1980), the trial judge did not comply with subsection (2). Nevertheless, we held that in situations where there was *no* recommendation by the prosecutor as to punishment, the provisions of subsection (2) did *not* apply. In other words, there is no requirement that a trial judge admonish the defendant as to the nonbinding character of a non-existent recommendation. *Id.*, 642 S.W.2d at 461–62 (Tex. Cr.App.1982)(Op'n on Reh'g). This reasoning necessarily pertains to subsection (3); if there is no recommendation as to punishment, subsection (3) is wholly inapplicable. Therefore, because there was no punishment recommendation in the instant case, the trial judge was not required to admonish appellant under either subsection (2) or (3).

The remaining question is whether the subsection(4) admonishment was required in the instant case. That admonishment must be given to every defendant entering a plea of guilty. *Morales v. State*, 872 S.W.2d 753, 755 (Tex.Cr.App.1994) (Clinton, Overstreet,

Maloney and Meyers, JJ., concurring) (citing *Ex parte Cervantes*, 762 S.W.2d 577 (Tex.Cr. App.1988)).

Morales entered into a plea bargain whereby she agreed to plead guilty to one offense and the State agreed to dismiss the remaining indictment. In admonishing Morales of the consequences of her guilty plea, the trial judge failed to admonish under art. 26.13(a)(4). Because there was no showing in the record whether Morales was or was not a United States citizen, the Court of Appeals reversed, 838 S.W.2d 272, 276 (Tex. App.—El Paso 1992), and we affirmed. 872 S.W.2d 753. Both opinions were reached through the standard method of statutory interpretation, i.e., relying on the literal text of the statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991) (We give effect to the plain meaning of the statute.).

Article 26.13(c) provides that substantial compliance is sufficient unless the defendant shows that he was not aware of the consequences of his plea and that he was mislead or *harmed* by the admonishment of the court.[2] In *Morales* we held there can be no substantial compliance where there is *no* compliance. Therefore, it logically followed that in a "no compliance" case, there was no requirement that the defendant show harm.[3] Moreover, because art. 26.13 provides its own species of harm analysis, Tex.R.App. P. 81(b)(2), is inapplicable to cases dealing with admonishment error.[4]

However, *Boykin* provides an exception to the literal text interpretation, namely where application of the statute's plain language would lead to an absurd result which the

---

**2.** Article 26.13(c) provides:
  In admonishing the defendant as herein provided, substantial compliance by the court is sufficient unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

**3.** The holding rule announced in *Morales* has been reaffirmed by this Court in *Ex parte Tovar*, 901 S.W.2d 484, 485 (Tex.Cr.App.1995), and *Ex parte Akhtab*, 901 S.W.2d 488, 489, n. 3 (Tex.Cr. App.1995).

**4.** In light of *Morales, Tovar* and *Akhtab*, the plurality's attempt to apply a harm analysis is very disturbing because such an analysis directly conflicts with those cases. Additionally, the analysis performed by the plurality is not properly conducted because it does not apply the factors prescribed in *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Cr.App.1989).

Legislature could not possibly have intended. *Ibid.* I believe this exception comes into play in the instant case because here, unlike Morales where the record as to citizenship was silent, the record shows that appellant was born in Houston. Appellant is, therefore, a nondeportable citizen of the United States. Obviously an interpretation requiring reversal of a conviction because the defendant did not receive an admonishment that was totally inapplicable to him and could not have affected his plea of guilty would lead to an absurd result.[5] The Courts of Appeals have recognized this absurdity and have not reversed a single case where the record affirmatively reflected the defendant was an United States citizen. *See, Foster v. State,* 817 S.W.2d 390, 392 (Tex.App.—Beaumont 1991); *Mitchell v. State,* 848 S.W.2d 917, 919 (Tex.App.—Texarkana 1993); *Dominguez v. State,* 889 S.W.2d 13, 15 (Tex. App.—El Paso 1994); *Dixon v. State,* 891 S.W.2d 783 (Tex.App.—Austin 1995); *Cain v. State,* 893 S.W.2d 681, 685 (Tex.App.—Ft. Worth 1995); *Durst v. State,* 900 S.W.2d 134, 140 (Tex.App.—Beaumont 1995); *Rodgers v. State,* 902 S.W.2d 726, 727–728 (Tex.App.—Ft. Worth 1995); *Fregia v. State,* 903 S.W.2d 94, 98 (Tex.App.—Beaumont 1995); *Armstrong v. State,* 911 S.W.2d 133, 135 (Tex. App.—Houston [1st Dist.] 1995); *and, Thomas v. State,* 932 S.W.2d 128, 131 (Tex.App.—San Antonio 1996). *Cf., Britton v. State,* 887 S.W.2d 188, 190 (Tex.App.—Ft. Worth 1994) (Evidence insufficient to establish citizenship.).

Generally, these Courts of Appeals' decisions have resulted from a finding of substantial compliance under art. 26.13(c), or a finding that the error was immaterial or irrelevant. However, I cannot agree that there has been substantial compliance because there has been *no* compliance. Indeed, this was the argument specifically rejected in *Morales.* Similarly, the trial judge's failure to admonish the defendant

should not be deemed immaterial or irrelevant. Such a holding would reduce the trial judge's responsibility for giving the admonishment to a mere technicality. We rejected this precise argument in *Whitten v. State,* 587 S.W.2d 156, 158–59 (Tex.Cr.App.1979).

Instead, I believe we are confronted with a clear case of statutory interpretation under *Boykin.* Under my interpretation, the law relating to cases on direct appeal may be stated as follows: when a trial judge fails to admonish a defendant pursuant to art. 26.13(a)(4) reversal is required if the defendant is not a United States citizen, *Cervantes,* or if the defendant's citizenship is unknown, *Morales;* but, an affirmance is in order if the record affirmatively establishes the defendant is a United States citizen. Another construction of art. 26.13 would either reject the literal text of the statute or lead to an absurd result.

In the instant case, the record affirmatively establishes the defendant is a United States citizen. Therefore, I concur in the decision to overrule the first point of error. With these comments, I join only the judgment of the Court.

MANSFIELD, Judge, concurring.

I join the opinion of the Court, but concur with respect to the disposition of point of error number one.

As part of his point of error number one, appellant avers the trial court erred in failing to admonish appellant regarding the possible deportation consequences of a guilty plea. Texas Code of Criminal Procedure, article 26.13(a) provides that prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:

(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the

---

**5.** In *Morales,* the concurrence stated:

Clearly, American citizens are not subject to deportation as a result of criminal conviction and cannot, therefore, be influenced by the

possibility of immigration difficulties when deciding whether to plead guilty to a criminal offense.

*Id.,* 872 S.W.2d at 755 (Clinton, Overstreet, Maloney and Meyers, JJ., concurring).

offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

The record shows that appellant was born on November 19, 1962 in Houston, Texas. He has lived his entire life in Texas except for a brief period of time he spent in the Army. It is thus beyond dispute that appellant is a United States citizen and cannot be deported for any reason unless he renounces his citizenship.

In *Morales v. State*, 872 S.W.2d 753 (Tex. Crim.App.1994), we held that failure to give the article 26.13(a)(4) admonishment was reversible error, even without a showing of harm. The record in *Morales* was completely silent as to appellant's citizenship, however, so it is possible to distinguish *Morales* from the present case where there is no question that appellant is a United States citizen. It is suggested, in Judge Meyers' concurring opinion in *Morales*, that in writing article 26.13(a)(4), the Legislature did *not* intend to require defendants pleading guilty or nolo contendere to litigate the issue of their citizenship at trial so that trial judges could determine whether the article 26.13(a)(4) admonishment had to be given. Therefore, the Legislature mandated that all such defendants receive the admonishment. *Morales*, at 755. This interpretation of possible legislative intent is logical, and the article 26.13(a)(4) admonishment must be given in *every* case where the record is silent as to the defendant's citizenship, as well as, of course, where the defendant is not a U.S. citizen.

*Morales*, I submit, does *not* apply to instances, such as the present case, where the record clearly shows the defendant is a United States citizen. As deportation or other immigration consequences are a legal impossibility with respect to appellant—a U.S. citizen—as a result of his guilty plea, article 26.13(a)(4) is inapplicable.

*Boykin v. State*, 818 S.W.2d 782 (Tex.Crim. App.1991) provides a framework for statutory analysis. In *Boykin*, we held that when we interpret a statute, we seek to effectuate the intent of the Legislature which enacted the legislation. "When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Boykin*, at 785.

> There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended we should not apply the language literally. When used in the proper manner, this narrow exception to the plain meaning rule does not intrude on the lawmaking powers of the legislative branch, but rather demonstrates respect for that branch, which we assume would not act in an absurd way.

*Boykin*, at 785.

The Legislature, in writing article 26.13(a)(4), expressed its intent that a defendant, before entering a plea of guilty or nolo contendere, be admonished as to the possible immigration consequences of such a plea, consequences applicable only if the defendant is not a U.S. citizen. Our decision in *Morales* correctly gave due deference to the Legislature's intent by holding it is reversible error to fail to give the admonishment where the record is silent as to defendant's citizenship status.

It would be an absurd result—a result the Legislature could not possibly have intended—to allow a defendant's conviction on a plea of guilty or nolo contendere to be reversed on appeal for failure to give the article 26.13(a)(4) admonishment where the record conclusively shows defendant is a U.S. citizen and thus the admonishment is legally inapplicable to him. Accordingly, I would hold that it was not error for the trial court to fail to give appellant the article 26.13(a)(4) admonishment because—as a U.S. citizen as demonstrated by the record—the admonishment is legally inapplicable to him.

With these comments, I join the opinion of the Court, but concur with respect to its disposition of point of error number one.

CLINTON, Judge, dissenting.

In order to affirm this capital murder conviction a plurality of the Court today is willing to call a procedure a "jury trial" though plainly it is not. To that same salutary end, the plurality further threatens to dismantle all of our recent caselaw regarding applicability of the rule governing harmless error on appeal. Because I do not believe affirming a capital murder conviction is worth the jurisprudential havoc, I dissent.

## I.

In his second point of error appellant complains that the trial court reversibly erred in taking his guilty plea outside the presence of the jury. He contends that this procedure violated his unwaivable right to trial by jury in any capital case in which the State will pursue the death penalty. Articles 1.14(a) and 1.13(b), V.A.C.C.P. The plurality today responds that as long as the jury returns a verdict of guilty and answers the special issues pursuant to Article 37.071, V.A.C.C.P., appellant has received all the trappings of a jury trial—never mind the jury never heard appellant enter his plea. It is enough that the trial judge told the jury he did. Op. at 930–931. I cannot agree.

The plurality casually observes that, while our caselaw "has emphasized that a plea of guilty *before a jury* is not a waiver of a jury trial, we have placed no importance on whether the jury was present or absent when the defendant entered his plea of guilty." Op. at 930. If this is true, it is only because so far in our caselaw the issue has not arisen. Certainly there was no question raised in the cases cited by the plurality that the guilty plea was entered in the jury's presence.

In *Williams v. State*, 674 S.W.2d 315 (Tex. Cr.App.1984), we addressed the contention that a guilty plea before the jury in a capital case amounts to an impermissible waiver of trial by jury. We responded by pointing out that pleas of guilty before the jury have always been considered by our law to constitute trial by jury. *Id.*, at 318, citing Miller v. State, 412 S.W.2d 650 (Tex.Cr.App.1967). There was no doubt in *Williams* that the guilty plea was taken *before the jury*. The claim was that taking a guilty plea in the jury's presence, and then proceeding straight to punishment, constituted a unitary trial, contrary to our statutory capital sentencing scheme, which requires bifurcation. In *Williams* and in *Holland v. State*, 761 S.W.2d 307, 313 (Tex.Cr.App.1988), where a similar claim was made, the Court held "that a plea of guilty before a jury in a capital case constitutes trial by jury whether such a proceeding be denominated 'bifurcated' or 'unitary' in nature." We had no occasion in these cases to "place[ ] ... importance on whether the jury was present or absent when the defendant entered his plea of guilty." It was clear in each of those cases that the jury was present. *Williams* and *Holland* do not support the plurality's conclusion today.[1]

Appellant did obtain a jury verdict in this cause, both as to guilt and as to punishment.

1. The plurality also relies on *Tutor v. State*, 599 S.W.2d 818 (Tex.Cr.App.1980), opinion at 930, a panel decision that was not subjected to rehearing by the En Banc Court. The majority opinion induced former Presiding Judge Onion to declare against "reach[ing] out and commend[ing] a procedure that would deprive a defendant of the right to enter his guilty plea before the jury," and to caution that the case "should not be used as a vehicle for promoting one procedure for a defendant to enter his plea before the jury after the indictment is read when that plea is guilty or nolo contendre and another procedure when the plea is not guilty." *Id.*, at 820. Perhaps his protest explains why *Tutor* has yet to be cited as authority by this Court—until today, that is.

Moreover, subsequently in *Shields v. State*, 608 S.W.2d 924 (Tex.Cr.App.1980), also cited by the plurality at 930, former Presiding Judge Onion pointed out that Article 26.11 is in the chapter of the Code of Criminal Procedure prescribing an arraignment, its purpose and requisites. Therefore, he opined: "[Article 26.11] does not control directly the procedure in a guilty plea. Article 27.13 does." *Id.*, at 927. That *Shields* was a trial before the court does not detract from the lesson being taught, *viz:* An arraignment is a pretrial exercise performing discrete functions designed to set the stage, so to speak, for an ensuing trial. Once completed, the arraignment becomes *functus officio;* a distinctly different set of procedural requisites dictate conduct of the trial that follows, including particularly that the accused must enter a plea before the factfinder— in this cause, the jury. E.g., *Williams* and *Holland*, supra.

The plurality holds, if only by juxtaposition, that this is enough fully to satisfy his right to trial by jury in a capital case. ("In appellant's case the jury entered a verdict as to his guilt and answered the special issues under Article 37.071; appellant received a jury trial." Op. at 931.) Yet it seems to me that under the circumstances neither verdict affords appellant much that can meaningfully be said to vindicate his unwaivable constitutional right to trial by jury.

It is true enough that it was a jury that returned a verdict of guilty in this cause. The jury had no alternative, since, as is the practice in guilty pleas before the jury, the trial court here instructed the jury that it must return a guilty verdict. This instruction is the product of this Court's observation of "the long established rule that a plea of guilty to a felony charge before a jury admits the existence of all incriminating facts necessary to establish guilt and, in such cases, the introduction of testimony by the State is to enable the jury to intelligently exercise the discretion which the law vests in them touching the penalty to be assessed." *Reyna v. State,* 434 S.W.2d 362, 364 (Tex.Cr.App.1968). It is thus apparently the law in Texas that, confronted with a plea of guilty in a felony case, even a capital felony, a jury has no legal option but to find the pleader guilty. *Fairfield v. State,* 610 S.W.2d 771 (Tex.Cr.App. 1981); *Morin v. State,* 682 S.W.2d 265 (Tex. Cr.App.1983)

It is also true that it is the jury that answers the special issues at the punishment phase of a capital prosecution in Texas. This is so if for no other reason than that Article 37.071, § 2(a) expressly mandates that the capital punishment proceeding "shall" be conducted "before the trial jury." In the vernacular of *Marin v. State,* 851 S.W.2d 275 (Tex.Cr.App.1993), this language might be said to identify a fundamental feature of the system, not optional with the parties. At the very least it identifies a right to jury determination of the special issues. If Article 37.071 identifies a feature of the system, then anything other than jury determination of special issues is simply intolerable, by virtue of the language of Article 37.071 itself. If it identifies a right, then arguably it cannot even be waived, at least not when read in conjunction with Articles 1.14(a) and 1.13(b), because under those provisions "the right of trial by jury" can only be waived if the State forsakes the death penalty. See *Powell v. State,* 897 S.W.2d 307, 318 (Tex.Cr.App.1994) (Clinton, J., concurring).

Either way, the right to a jury verdict on special issues is purely a creature of statute. There is no right under the United States Constitution to a jury determination of special issues. *Cabana v. Bullock,* 474 U.S. 376, 385–86, 106 S.Ct. 689, 696–97, 88 L.Ed.2d 704, 716 (1986). Nor is there any such right under the Texas Constitution. *Bullard v. State,* 548 S.W.2d 13, 19 (Tex.Cr.App.1977). That the statute mandates a jury decision on special issues in the punishment phase of a capital murder trial would not seem to vindicate any *constitutional* right to trial by jury.[2]

Yet the plurality says appellant fully enjoyed his right to a jury trial because the jury returned a guilty verdict and a verdict on the punishment issues. If this is everything appellant is entitled to, then the right to trial by jury is a piddling thing. A jury has no alternative but to follow the trial court's instruction to return a guilty verdict.

---

2. It is true that in *Morin v. State,* supra, we remarked that "the defendant is not deprived of a trial by jury when a verdict is directed pursuant to a guilty plea since the jury receives evidence at the punishment stage and must determine whether the defendant is to receive life imprisonment or the death penalty." *Id.,* at 269. This remark seems to signify a belief that the fact that the jury is instructed to return a guilty verdict does not adversely impact a capital defendant's right to jury trial because the jury still answers special issues. As such, it stands as better authority than *Williams* and *Holland* for what the plurality holds today. But the Court's remark in *Morin* is *sans* citation to supporting authority, and seems to be unmindful of the Court's earlier holding in *Bullard* that the constitutional right to trial by jury does not embrace the right to jury determination of punishment issues. Enjoyment of a jury determination during a phase of trial at which he is not constitutionally entitled to one cannot satisfy a criminal defendant's right to trial by jury during a phase at which he clearly *is*.

And jury determination of punishment is not even part of any *constitutional* right to jury trial. If the jury need not actually be present to hear the capital defendant's plea of guilty, it is hard to identify just what the constitutionally significant jury function *is* that Articles 1.14(a) and 1.03(b) so assiduously protect.

There are many who will regard a requirement that the jury actually hear the guilty plea as a mere formality. But a guilty verdict cannot rest upon thin air. When a criminal accused pleads not guilty to a felony offense, he puts the State to its proof. In that event a guilty verdict must be predicated upon evidence that is sufficient to convince (and that actually does convince) the factfinder beyond a reasonable doubt of the defendant's guilt. In a plea of guilty in a felony trial before the court, "in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." Article 1.15, V.A.C.C.P. But in a plea of guilty before the jury, the jury is authorized (indeed, apparently required) to find the defendant guilty on the basis of his naked plea. The presumption of innocence and the requirement of evidence sufficient to convince the factfinder beyond a reasonable doubt do not pertain. *Fairfield v. State,* supra, at 776 & n. 5. Unless evidence adduced to inform the jury's discretion in assessing punishment should raise a substantive issue as to the defendant's guilt,[3] the jury can only convict. *Id.* In essence, the guilty plea before the jury obviates the State's burden of proof and stands in the place of actual evidence adduced in support of a verdict (in a jury trial) or judgment (in a bench trial). It is not clear whether the plea thus operates as conclusive evidence of guilt, or simply authorizes conviction in the absence of evidence. Either way, it seems to me, the jury itself must actually hear it. If the jury has not at least heard the plea, we cannot credibly justify excusing it from its traditional factfinding function, and still

maintain that we have afforded the capital defendant anything approaching a "jury" trial. In what possible sense could we say that he has obtained his right to a jury assessment of guilt/innocence (which is, after all, the only thing we have said the constitutional right to trial by jury guarantees)?

Because the jury was not present to hear him enter a plea of guilty in this cause, appellant was denied his right to trial by jury. This right is "inviolate," under Article I, § 15 of the Texas Constitution, and, in a capital case in which the State pursues the death penalty, cannot even be affirmatively waived, much less forfeited by failing to object. Articles 1.14(a) and 1.13(b), supra; *Marin v. State,* supra. We should reverse the conviction and remand the cause to the trial court for new trial. Because the Court does not, I dissent.

## II.

I also object to the plurality's treatment of appellant's first point of error. Holding that the trial court erred in failing to admonish appellant in accordance with Article 26.13(a), subsections (2) through (4), V.A.C.C.P., the plurality finds the error harmless under Tex. R.App.Pro., Rule 81(b)(2). In order to do so, the plurality must plow under recently-settled caselaw on the scope and applicability of the harmless error rule.

On its face, Article 26.13 applies to any plea of guilty, including a guilty plea to a capital murder indictment. This is odd, since the admonishments in Article 26.13(a)(2) and (3) clearly have no application in a capital case. I would hold that to give the admonishment required by the plain language of Article 26.13(a)(2) and (3) in a capital case would reap a truly absurd result, *viz:* to mandate informing a capital defendant of certain "facts" that simply are not accurate. Because the plain meaning is absurd, we may consult other indicia of legislative intent.

---

3. In this event it becomes the duty of the trial court to withdraw the guilty plea, enter a plea of not guilty on behalf of the defendant, and proceed to trial on the issue of his guilt or innocence. *Fairfield,* supra, at 777–778, quoting *Taylor v. State,* 88 Tex.Cr.R. 470, 483, 227 S.W. 679, 686 (1918) (Opinion on motion for rehearing).

See *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App.1991). Because I cannot imagine the Legislature intended for the trial court to "admonish" a capital defendant with irrelevancies to assure the voluntary and knowing character of his guilty plea, I would simply hold that the admonishments of Article 26.13(a)(2) and (3) do not apply in taking a capital guilty plea. For that reason the trial court did not err in failing to admonish appellant under those provisions.

It is far less clear that the deportation admonishment of Article 26.13(a)(4) does not apply in a capital case. It is perhaps for this reason that the plurality is content to call the trial court's failure to give the admonishment error, but harmless beyond a reasonable doubt under Rule 81(b)(2). In my view, however, the plurality errs to apply that rule.

It is true that under Article 26.13(c), substantial compliance with the admonishment requirements of Article 26.13(a) will suffice unless a defendant can show he was unaware of the consequences of his plea and he was misled or harmed by the admonishment. Conversely, in *Morales v. State,* 872 S.W.2d 753 (Tex.Cr.App.1994), we held that failing to give the deportation admonishment altogether, because it did *not* amount to substantial compliance, was not subject to the Article 26.13(c) requirement that the defendant show harm. *Morales* did not expressly hold that failure to substantially comply with one of the Article 26.13(a) admonishments is subject to a Rule 81(b)(2) harmless error analysis—in fact, in *Morales* we did not address that question at all. For this reason, says the plurality today, *Morales* "does not preclude application of an 81(b)(2) analysis to the error under review." Op. at 927.

However, we did affirm the court of appeals' reversal of the conviction in *Morales,* even though the court of appeals had not conducted a harm analysis under Rule 81(b)(2). We affirmed that reversal without performing, remanding for, or even remotely alluding to the necessity of, an analysis for harm. This is not surprising, given that up to that time we had consistently identified

failure at least substantially to comply with the admonishment requirements of Article 26.13(a) as error of a "fundamental" nature. *Ex parte Cervantes,* 762 S.W.2d 577 (Tex.Cr.App.1988); *Ex parte McAtee,* 599 S.W.2d 335 (Tex.Cr.App.1980). None of the opinions in *Morales* mentions Rule 81(b)(2) because it did not occur to any of us to apply a harm analysis, none ever having been applied before to the total failure to give any of the Article 26.13(a) admonishments.

In essence, we have treated complete failure to give the deportation admonishment under Article 26.13(a)(4) as error that is immune to a harm analysis because it is one of those "prophylactic rules of procedure designed, in most cases by the Legislature, to impose a uniform requirement where the fairness of a flexible rule is too uncertain." *Marin v. State,* supra, at 281. The statute was plainly written so as "to assure that trial judges need never litigate the question of a person's citizenship in order to determine whether he should be admonished under subdivision four." *Morales,* supra, at 755 (Meyers, J., concurring). "Speculation about the possible effect of ignoring prophylactic procedural rules," we observed in *Marin,* "is always a perverse and inappropriate application of the harmless error doctrine." 851 S.W.2d at 281. Nevertheless the plurality decides today that error in failing to admonish on the possibility of deportation is subject to an analysis for harm under Rule 81(b)(2). By this the plurality only assures that the citizenship of a defendant is likely to be the subject of litigation in every guilty plea proceeding after all, since, as in this case, failure to admonish an American citizen will be deemed harmless. Thus the legislative intent is wholly thwarted.

Of course, in order to apply Rule 81(b)(2), and thus dispose of this pesky capital murder appeal with the desired result, *viz:* an affirmance, the plurality must first "disavow" the rationale of a number of considered opinions decided in the last half dozen years, on full briefing, on petitions for discretionary review, in which the precise issue before the Court was the propriety of application of

Rule 81(b)(2). Not only is the holding in Part III of *Marin* now in jeopardy, but so are the Court's opinions in *Warmowski v. State*, 853 S.W.2d 575 (Tex.Cr.App.1993), *Sodipo v. State*, 815 S.W.2d 551 (Tex.Cr.App. 1990) (Opinion on original submission), and *Nunfio v. State*, 808 S.W.2d 482 (Tex.Cr.App. 1991), and no doubt others as well. The "case by case" harm analysis endorsed by the plurality today, Op. at 928, was expressly rejected in *Marin* and *Warmowski*. It is disconcerting to see how readily the Court will sacrifice its own settled precedent in order to avoid the public disapprobation that inevitably follows reversal of a capital murder conviction.

To such jurisprudential wavering, I also dissent.