Moses MONTEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–96–01603–CR.

Court of Appeals of Texas,
Dallas.

Aug. 20, 1998.

Robert J. Reagan, Reagan and McLain,
Dallas, for appellant.

Karen R. Wise, Asst. Dist. Atty., Dallas, for State.

Before MORRIS, JAMES and BRIDGES, JJ.

## OPINION

MORRIS, Justice.

After a jury trial, Moses Montez appeals his conviction for murder. In his sole point of error, he complains that the trial court erroneously refused his timely request to shuffle the jury panel. We agree the trial court erred but, concluding the error did not affect a substantial right of appellant, we affirm the trial court's judgment.

### FACTUAL BACKGROUND

On June 10, 1996, the parties appeared for trial. At the beginning of the recorded proceedings, defense counsel brought to the trial court's attention a number of pretrial motions he had filed on appellant's behalf. Although he also had filed a motion to shuffle the jury panel, defense counsel did not mention the motion at that time. After the other motions were discussed, the jury panel was brought into the courtroom and seated.

After the jury panel was seated, the trial judge made various introductory remarks to the prospective jurors. Specifically, he introduced the parties and attorneys and asked if anyone on the jury panel knew them. The trial judge also summarized the indictment, explained the applicable range of punishment, defined the meaning of reasonable doubt, and informed the prospective jurors about the general procedure in criminal trials. The judge then asked if any panel member had a problem or disability that would prevent their service in a three or four day jury trial. Two members of the jury panel indicated they had medical problems. At that point, the trial court recessed for the noon hour.

Immediately after the proceeding resumed, defense counsel orally asserted the previously filed motion to shuffle the jury panel. The trial court denied the motion as untimely, saying the motion had to be asserted "before the voir dire commences, and that includes what I say to them." Appellant challenges this ruling.

### DISCUSSION

■ Under article 35.11 of the code of criminal procedure, a defendant is entitled, upon timely demand, to have the jury panel for the case shuffled. TEX.CODE CRIM. PROC. ANN. art. 35.11 (Vernon Supp.1998). A shuffle has the effect of randomly reordering the names of prospective jurors on the jury list. A request for a shuffle is timely if made before the start of voir dire examination. *Williams v. State*, 719 S.W.2d 573, 575 (Tex. Crim.App.1986). Voir dire starts when the State is called upon by the trial court to commence voir dire examination and actually starts that examination. *Id.* at 577. A trial court's introductory remarks, like those made in this case, are not considered part of voir dire examination even if voir dire-type questions are interspersed among them. *Id.* Accordingly, appellant's request was timely, and the trial court's ruling was erroneous for failing to follow article 35.11. We now address whether the error mandates reversal of appellant's conviction.

In his brief, appellant does not argue that he was harmed by the trial court's error. We assume appellant relies instead on a long line of Texas cases holding that the erroneous denial of a jury shuffle is automatically reversible error for which a defendant need not show harm. *See, e.g., Ex parte Daigle*, 848 S.W.2d 691, 692 (Tex.Crim.App.1993); *Jones v. State*, 833 S.W.2d 146, 147–48 .(Tex. Crim.App.1992); *Williams*, 719 S.W.2d at 575; *Yanez v. State*, 677 S.W.2d 62, 69 (Tex. Crim.App.1984); *Latham v. State*, 656 S.W.2d 478, 479 (Tex.Crim.App.1983). The State urges us, however, to apply *Matchett v. State* to make a harmless error analysis under former appellate rule 81(b)(2) and to hold the error harmless.[1] *See Matchett v. State*,

---

1. Rule 81(b)(2) provided:
   If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under

   review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

941 S.W.2d 922 (Tex.Crim.App.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997).

■ We need not decide whether *Matchett* requires us to conduct a harmless error analysis under former rule 81(b)(2) because we apply the new appellate "reversible error" rule in this case. *See* TEX.R.APP. P. 44.2. The Texas Court of Criminal Appeals, in adopting the new appellate rules, expressly ordered that the new rules will govern all proceedings pending on September 1, 1997, "except to the extent that in the opinion of the court their application in a particular proceeding then pending would not be feasible or would work injustice, in which case the former procedure may be followed." We conclude it is feasible to apply new rule 44.2. The remaining question is whether our application of rule 44.2 would work injustice. We conclude it would not.

Under the common law existing before the promulgation of rule 81(b)(2), appellant could urge an automatic reversal of his conviction without showing harm. *See, e.g., Yanez,* 677 S.W.2d at 68–69. The State suggests *Matchett* now requires a showing of harm. Even if we were to apply *Matchett* as the State urges, it would not require us to perform a rule 81(b)(2) harmless error analysis. *Matchett* only requires us to determine whether, in fact, a meaningful harm analysis is possible from the record. *See Matchett,* 941 S.W.2d at 928. We acknowledge, like other appellate courts have done, that jury shuffle error is usually not conducive to a harmless error analysis under former rule 81(b)(2). *E.g., Chappell v. State,* 850 S.W.2d 508, 513 (Tex.Crim.App.1993). Thus, under the presumption of former rule 81(b)(2) that all errors are harmful unless shown otherwise, appellant might be entitled to a reversal even if we applied rule 81(b)(2) as the State suggests.

The likelihood of reversal under the former rule alone, however, does not compel the conclusion that the application of the new rule is unjust, especially where, as here, the State introduced overwhelming and unchallenged evidence of guilt. The risk of injus-

tice is not limited to the interests of appellant. In fact, based on the type of error found in this case, we conclude it would be unjust to reverse a conviction in which there was overwhelming and uncontradicted evidence of guilt for a murder that occurred more than four years ago, a long enough period of time for the evidence the State relied on to prove appellant's guilt to become possibly lost or no longer available.

■ We also note that it is generally recognized that procedural statutes control litigation from their effective dates and apply to pending actions so long as they do not impose punishment for an act which was not punishable at the time it was committed, or increase the prescribed punishment, or change the rules of evidence by which less or different testimony is sufficient to convict than was previously required. *See Collins v. Youngblood,* 497 U.S. 37, 45–46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (discussing ex post facto clause); *Grimes v. State,* 807 S.W.2d 582, 586–87 (Tex.Crim.App.1991). The rules of appellate procedure are obviously procedural in nature. The new reversible error rule 44.2 does not criminalize an act that was innocent at the time it was committed; it does not increase appellant's punishment; it does not deprive him of any legal defenses; nor does it change the proof necessary for conviction. *See Collins,* 497 U.S. at 52, 110 S.Ct. 2715; *Grimes,* 807 S.W.2d at 587. The new rule may have a disadvantageous effect on the outcome of appellant's appeal, but Texas may accord a right of appeal "upon such terms as in its wisdom may be deemed proper." *See Griffin v. Illinois,* 351 U.S. 12, 21, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (Frankfurter, J., concurring) (citing *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)). Texas has deemed it proper to reject the presumption of harmful error in rule 81(b)(2) and to adopt a procedure, patterned after a federal rule, that has the effect of reducing the class of errors that require reversal of criminal convictions. *See* TEX.R.APP. P. 44.2(b) (notes and comments). We conclude, therefore, that it does not work injustice to apply rule 44.2. We must now consider whether, under

TEX.R.APP. P. 81(b)(2).

the new rule, the trial court's error requires reversal of appellant's conviction. Again, we conclude it does not.

■■■ The right to have the names of the jury panel shuffled or redrawn is not of constitutional dimension. *Yanez,* 677 S.W.2d at 68. Therefore, we disregard the trial court's error unless it affected a substantial right of appellant. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when (1) the error had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *See O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995); *United States v. Arutunoff,* 1 F.3d 1112, 1118 (10th Cir.), *cert. denied,* 510 U.S. 1017, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993); *see also King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997).[2] A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines that the error did not influence, or had only a slight influence, on the trial outcome. *See United States v. DeAngelo,* 13 F.3d 1228, 1233 (8th Cir.), *cert. denied,* 512 U.S. 1224, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994). Our task, therefore, is not simply to identify what particular substantial right may have been affected, but is to determine whether the error influenced the trial's outcome.

■■■ We begin our analysis by noting that the right to a jury shuffle is not a personal right held exclusively by a defendant. *See Jones,* 833 S.W.2d at 148 n. 3. In fact, article 35.11 is satisfied when a shuffle is properly carried out as a result of a request made by a codefendant or even the prosecutor. *See id.* at 148–49; *Latham,* 656 S.W.2d at 480–81. The purpose of article 35.11 is not to guarantee that a defendant will have a jury panel in a preferred order. The purpose of article 35.11 is simply to ensure the compilation of a random list of jurors. *Jones,* 833 S.W.2d at 148.

Acknowledging the purpose of article 35.11, we also note section 62.001 of the government code, amended in 1991, requires the jury pool to be drawn from the names of all persons currently registered to vote, all citizens currently holding a valid Texas driver's license, and all citizens currently holding a valid personal identification card. TEX. GOV'T CODE ANN. § 62.001 (Vernon Supp. Pamph.1998). Given the broader, more diverse pool of jurors available under the statute, and in the absence of any evidence of irregularity in preparing the venire list from that pool of jurors, the purpose of a jury shuffle is normally accomplished even before the venire is seated in the courtroom and subject to a shuffle under article 35.11. *See Sanders v. State,* 942 S.W.2d 3, 6 (Tex.Crim. App.1997) (Baird, J., concurring) (concluding that jury shuffle statute's "day has passed").

The record in this case is silent with respect to the seating order of the jury panel. We know from the record that there were at least forty-one panel members. Six of these apparently were excused from service without objection or by agreement of defense counsel. Appellant did not move to strike any panel member for cause nor did he request additional strikes for peremptory challenges. After the parties made their peremptory challenges and the jury was named, defense counsel did not object to the jury that was chosen from the unshuffled panel nor did he indicate that an objectionable juror was seated on the jury. There is nothing in the record before us to indicate that the list of jurors was not random or that the list's preparation or the jurors' seating order was irregular.

In addition, the uncontradicted evidence of guilt in this case overwhelmingly rebutted the presumption of appellant's innocence. Shortly after midnight on New Year's Eve in

**2.** A dissenting opinion recently suggested that the *King* holding only applies to evidentiary error and that rule 44.2(b) should be applied differently to statutory violations. *See Twine v. State,* 970 S.W.2d 18, 21 (Tex.Crim.App.1998) (Baird, J., dissenting). Federal case law suggests otherwise. *See United States v. Lane,* 474 U.S. 438, 445, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (holding that federal harmless error rule 52(a) applies to violation of joinder rules and does not distinguish between types of error). We note again that rule 44.2(b) is patterned after a federal rule. *King* follows the federal interpretation. Accordingly, we follow and apply the holding in *King* in this case.

1993, two rival gangs were "talking trash" on a neighborhood street. The evidence was undisputed that the victim and his group were unarmed. Nonetheless, two youths from the other gang fired guns at the victim's group, and the victim died of a gunshot to the chest. A firearms expert testified that, based on its size, the bullet recovered from the victim's body was fired from either a .38 Special or a .357 Magnum. A fellow member of appellant's own gang testified against appellant. He was an eyewitness. He said appellant was one of the shooters and that appellant fired three or four rounds from a .38 Special. Appellant presented no defense testimony at the guilt stage of trial. Because no .357 Magnum was involved in this offense, the uncontradicted evidence indicated not only that appellant was one of the shooters, but that appellant fired the fatal bullet with the .38 Special.

Overwhelming evidence of guilt has been held sufficient to render harmless any error in the admission of improper evidence. *See United States v. Moore*, 129 F.3d 989, 991–92 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1402, 140 L.Ed.2d 659 (1998); *United States v. Ong*, 541 F.2d 331, 338 (2d Cir.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1559, 51 L.Ed.2d 780 (1977). Overwhelming evidence of guilt has also been relied upon to render harmless the violation of a federal criminal procedure rule. *See United States v. Lane,* 474 U.S. 438, 450, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Similarly, we conclude in this case that overwhelming evidence of appellant's guilt supports the conclusion that the trial's outcome was not influenced and appellant's substantial rights were not affected by the court's error in refusing to shuffle the jury panel. Given the overwhelming evidence of guilt, we also conclude that any rational jury, including one that may have been empaneled after a shuffle, would have found appellant guilty.

We also note that the punishment range for this offense was five to ninety-nine years or life imprisonment. The jury assessed an eighteen-year sentence for murder. The sentence imposed was at the lower range of the available punishment. We cannot conclude the jury selected from the unshuffled panel was disadvantageous to appellant. The sentence imposed also tends to show the trial court's error in not shuffling the jury did not influence the trial's outcome and affect a substantial right.

Given the nature of the right to a jury shuffle, the lack of objection to the empaneled jury, the lack of any indication that the jurors were not randomly listed, the overwhelming evidence offered by the State to establish appellant's guilt, and the relatively moderate sentence assessed, we conclude the error did not have a "substantial and injurious" effect or influence on the trial's outcome. We do not suggest, however, that the erroneous denial of a jury shuffle can never be reversible error. An appropriate record may present facts showing, or leaving an appellate court in grave doubt about whether the erroneous denial of a shuffle had a substantial and injurious effect on the verdict. The record in this case does not. The record here supports the conclusion that the jury shuffle error did not affect the outcome of the trial.

Based on our analysis, we disagree with the conclusion reached in the recent opinion in *Ford v. State,* No. 2–97–174–CR, slip op. at 4, 1998 WL 304362 at *3 (Tex.App.—Fort Worth June 11, 1998, no pet. h.). There, the Fort Worth court assumed, without citing any supporting legal authority, that the jury shuffle right provided in article 35.11 is a "substantial right" because it is a mandatory statutory right. It then concluded that jury shuffle error required reversal because the effect of such error on the jury's verdict could not be measured. We believe the Fort Worth court's conclusion is unsound for several reasons.

First, the Fort Worth court's conclusion sacrifices judicial review in favor of automatic application of the statute, thereby ignoring the analysis required by rule 44.2. As the Supreme Court noted in *Lane* (with respect to the application of a federal rule), "[a]ny assumption that once a 'substantial right' is implicated it is inherently 'affected' by any error begs the question raised by Rule 52(a)." *Lane,* 474 U.S. at 448 n. 11, 106 S.Ct. 725. Similarly, in applying rule 44.2, the inquiry is whether the error *affects* "substan-

tial rights" requiring reversal of a conviction, not whether a substantial right is present. Answering that question necessarily requires a review of the entire record.

Second, the Ninth Circuit Court of Appeals' opinion upon which *Ford* relies *does not* hold that errors whose effects cannot be measured require reversal. *See Hatchett v. Government of Guam,* 212 F.2d 767, 772 (9th Cir.), *cert. dism'd by* 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954). The Fort Worth court apparently infers this reasoning from the simple fact that the Ninth Circuit did not perform a harm analysis in *Hatchett. See Ford,* slip op. at 3. Moreover, *Hatchett* is factually distinguishable from both this case and *Ford* because the grand jury right at issue in *Hatchett* was constitutional in nature.

Third, the Fort Worth opinion relies on *Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App. 1997) to support its conclusion that errors cannot be harmless if they defy analysis by harmless error standards. *Cain* is inapposite here because it specifically applied former rule 81(b)(2), a rule which *presumed* harm unless the record showed otherwise. *Cain,* 947 S.W.2d at 264. Rule 44.2 abrogated that presumption.

Finally, the conclusion in *Ford* is based, at least in part, on the assumption that without the threat of reversal on appeal, Texas trial judges will ignore the jury shuffle statute and thereby render a mandatory statute discretionary. This assumption is unwarranted. Our opinion today does not oblige appellate courts to affirm all future cases involving jury shuffle error. As we have already noted, a different record might show, or leave a reviewing court in grave doubt about whether, the error affected the trial's outcome. Thus, the threat of reversal remains. But just as importantly, we reject *Ford's* implication that trial judges apply the law only because they fear reversal on appeal. All Texas judges take the same oath to uphold the law of this state. We decline to presume that Texas trial judges would consciously ignore their oaths.

Accordingly, we overrule appellant's sole point of error. We affirm the trial court's judgment.