11th Court of Appeals








11th Court
of Appeals

Eastland,
Texas

Opinion

 

Holden Meril Baker

Appellant

Vs. Nos. 11-01-00167-CR & 11-01-00168-CR B Appeals from Dallas County 

State of Texas

Appellee

 

The jury
convicted appellant of the aggravated sexual assault of a 10-year-old girl
(Cause No. 11-01-00167-CR) and the aggravated sexual assault of her mother
(Cause No. 11-01-00168-CR).  The jury
assessed punishment in each case at life imprisonment and a $1,000 fine.  In five points of error, appellant argues
that: (1) the trial court erred by failing to define reasonable doubt in the
jury charge; (2) the evidence was factually insufficient to prove that
appellant sexually assaulted either of the victims; (3) the trial court erred
by denying appellant=s
motion for mistrial after the State=s impermissible jury argument; and (4) the trial court erred by failing
to properly limit the definitions of Aintentionally@ and Aknowingly@ to the relevant conduct elements in the jury charge.  We affirm.

In Cause
No. 11-01-00167-CR, appellant argues in his second and third points of error
that the evidence is factually insufficient to support his conviction for
aggravated sexual assault of the child victim (K.M.).  In Cause No. 
11-01-00168-CR, appellant argues in his second point of error that the
evidence is factually insufficient to support his conviction for aggravated
sexual assault of the mother (P.M.).  








  In deciding whether the evidence is
factually sufficient to support the conviction, we must review all of the
evidence in a neutral light favoring neither party to determine if the verdict
is so against the great weight of the evidence as to be clearly wrong and
unjust.    Johnson v. State, 23 S.W.3d 1
(Tex.Cr.App.2000); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  We review the fact finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State,
supra.  Due deference must be given to
the jury=s determination, particularly concerning the
weight and credibility of the evidence. 
Johnson v. State, supra; Jones v. State, 944 S.W.2d 642
(Tex.Cr.App.1996), cert. den=d, 522 U.S. 832 (1997).  This
court has the authority to disagree with the fact finder=s determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@ 
Johnson v. State, supra at 9.

K.M.
testified that, in September 1996, she lived in Baton Rouge, Louisiana, with
her mother, P.M., and her mother=s boyfriend, Troy.  Troy is
appellant=s brother.  
At that time, P.M. and Troy were arguing, and K.M. and P.M. went to stay
with appellant.  There were several
other friends and relatives who were also staying with appellant.  The group began staying at different motels
because appellant said that Troy was making threats to harm them.  At the last motel where the group stayed,
appellant asked P.M. to drive him to Texas. 
K.M. testified that P.M. initially refused to take appellant to Texas
because K.M. was in school.  K.M. stated
that appellant threatened to Aslice [K.M.=s]
throat@ if P.M. did not drive him to Texas.  P.M. then agreed to drive appellant to  Texas if he would not hurt K.M. 

K.M.
testified that she, P.M., and appellant went to Houston for one night, and then
they went to Dallas where they stayed at the Lawnview Motel.  One night at the motel, K.M. was taking a
shower when she heard a noise.  She got
out of the shower and opened the door of the bathroom.  K.M. testified that appellant was holding a
knife and taping P.M.=s arms
and mouth. Appellant grabbed K.M., pulled her out of the bathroom, and told her
to Ashut up@ or he would Aslice
[her] throat.@  K.M.
stated that appellant held the knife to her throat.  K.M. said that appellant slapped P.M. and that P.M. fell to the
floor. 

K.M.
testified that appellant made her go and sit by the chair.  K.M. sat on the floor on her knees while
appellant sat in the chair.  Appellant
told P.M., Aif she didn=t want to watch what was about to happen, that he=d turn her over on her side.@ 
Appellant then returned to K.M. and Aundid his pants.@   He grabbed K.M.=s 
hand and put it inside of his pants. 
Appellant instructed K.M. to remove the towel she was wearing, and he
began to touch her and Afeel all over [her] body.@  K.M. testified that appellant
put his hands A[b]etween [her] legs@ and his fingers Ainside@ of her.  Appellant then allowed
K.M. to put on her Tweety Bird pajamas and lay next to P.M. on the bed.








            K.M.
testified that appellant told them that he would kill them if they made any Aweird movements.@   
Appellant took the tape off of P.M.=s mouth and Aripped
off@ her clothes.  Appellant pulled down his pants, got on top of P.M., and Araped@ her.  Appellant left the tape
on P.M.=s hands the entire night.  The next day, appellant bought K.M. a teddy
bear, told her he was sorry, and said that he Awasn=t going to do it again.@ 

K.M.
stated, however, that that night, appellant told her and P.M. to take off their
clothes.  K.M. said that appellant again
put his fingers Ainside@ of her and that, Aafter he was finished with [her], then he would go to [P.M.].@  K.M.
testified that appellant made both her and P.M. perform oral sex on him. 

K.M.
testified that, on the last night they were in Dallas, appellant sent P.M. to
the store for cigarettes.  While P.M.
was gone, appellant again made K.M. perform oral sex.  K.M. stated that, when P.M. returned, appellant Araped@ P.M. again.  The next day they
returned to Baton Rouge.  K.M. said that
they dropped appellant off on the side of the road and that he ran into the
woods.  Appellant told K.M. and P.M. to
tell Troy what he had done to them.   K.M. and P.M. went to K.M.=s grandmother=s
house to sleep.  K.M. testified that she
and P.M. then went to her aunt and uncle=s house and told her uncle, who is a police officer, what had
happened.  K.M. and P.M. went to the
hospital and the police station and then returned to stay with K.M.=s aunt and uncle.

P.M. also
testified at trial that, after staying at appellant=s house and several motels, appellant  threatened to Aslice [K.M.=s]
throat@ if P.M. did not take him to Texas.  P.M. testified that, the second night they
were in Dallas, appellant taped her arms and mouth with duct tape while K.M.
was in the shower.  When K.M. got out of
the shower, appellant grabbed her and her towel fell.  Appellant then hit P.M. and turned her over so that she could not
see what he was doing to K.M.  P.M.
testified that, while they were in Dallas, appellant made both her and K.M.
perform oral sex on him and that he made P.M. have Aregular sex@ with him.  P.M. also testified
that appellant put his finger inside of K.M. 


Dr. Holly
Galland testified that she examined both K.M. and P.M.  Dr. Galland stated that the exam of P.M. was
a Anegative exam@ and that she did not find any evidence of injuries.  Dr. Galland stated that it is common for
women to not show signs of trauma when engaging in sexual activity.  Dr. Galland stated that K.M. had a few small
lacerations and bruises on her genital area.  
Dr. Galland noted that these injuries indicated there was some trauma
which could have resulted from digital penetration. 








Appellant
specifically argues in his second and third points of error in Cause No.
11-01-00167-CR that the evidence is factually insufficient to show that he Acaused contact or penetration of [K.M.=s] mouth with his penis@ and that he Acaused the penetration of [K.M.=s] sexual organ with his finger.@  Appellant contends in his
second point of error in Cause No. 11-01-00168-CR that the evidence is
factually insufficient to show that he Ahad sexual intercourse with [P.M.].@  Both K.M. and P.M. testified
that appellant made them perform oral sex on him.  Both victims also testified that appellant put his finger Ainside@ of K.M.  P.M. testified that
appellant made her have Aregular sex@ with
him, and K.M. testified that appellant Araped@ P.M. 
The jury is the exclusive judge of the credibility of the witnesses and
of the weight to be given to their testimony. 
TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 and
1981); Wesbrook v. State, 29 S.W.3d 103 (Tex.Cr.App. 2000), cert. den=d, 532 U.S. 944 (2001).  Viewing
all of the evidence, we do not find that the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Clewis v. State, supra.  We overrule appellant=s second and third points of error in Cause
No. 11-01-00167-CR and his second point of error in Cause No.  11-01-00168-CR.

In his
first point of error in both cause numbers, appellant argues that the trial
court erred in  failing to include a
reasonable doubt definition in the jury charge.   In Paulson v. State, 28
S.W.3d 570 (Tex.Cr.App.2000), the court held that the reasonable doubt
definition set out in Geesa v. State, 820 S.W.2d 154 (Tex.Cr.App.1991), is no
longer required to be given in the jury charge.  The court handed down Paulson on October 4, 2000.  Appellant was indicted on March 14, 2001,
and the trial began on March 26, 2001. 
Appellant contends that, because the offense occurred in September 1996,
the trial court was required to give the definition as instructed by Geesa.  








The
reasonable doubt instruction is procedural in nature.  See Geesa v. State, supra. 
Procedural rules generally control litigation from their effective date.  Wilson v. State, 473 S.W.2d 532
(Tex.Cr.App.1971); Montez v. State, 975 S.W.2d 370 (Tex.App. - Dallas 1998, no
pet=n). 
Therefore, Paulson was applied prospectively in this case.  See Geesa v. State, supra.  Moreover,  
in Arroyo, the San Antonio Court of Appeals reversed the
defendant's conviction because the trial court failed to give the entire Geesa
instruction.  Arroyo v. State, 9 S.W.3d
330 (Tex.App. ‑ San Antonio 1999). The Court of Criminal Appeals reversed
the San Antonio Court of Appeals for reconsideration in light of Paulson
thereby indicating Paulson applied notwithstanding it had not issued at
the time of the defendant's trial.  See
Arroyo v. State, 32 S.W.3d 868 (Tex.Cr.App.2000); see also Bordman v. State, 56
S.W.3d 63, 72 (Tex.App. ‑ Houston [14th Dist.] 2001, pet=n ref'd). 
Appellant=s first point of error in both cause numbers
is overruled.         

In his
fourth point of error in Cause No. 11-01-00167-CR and in his third point of
error in Cause No. 11-01-00168-CR, appellant argues that the trial court
improperly overruled his motion for mistrial after the State=s improper jury argument. The State made the
following argument to the jury:

The
defense lawyer who was just up here talking to you, has got a different
job.  His job isn=t defined to seek justice.  His job is to be an advocate for this
man.  His job is, is to keep your eyes
off the truth. 

 

Appellant objected to the
argument; and the trial court sustained appellant=s objection, instructed the jury to disregard the remark, and denied
appellant=s motion for a mistrial. 

There are
four permissible areas of jury argument: A(1) summations of the evidence; (2) reasonable deductions from the
evidence; (3) responses to the defendant=s argument; or (4) a plea for law enforcement.@ 
Lagrone v. State, 942 S.W.2d 602, 619 (Tex.Cr.App.1997).   An instruction to disregard generally cures
error during closing argument unless the argument is so inflammatory that its
prejudicial effect cannot reasonably be removed by such an admonition.   Hernandez v. State, 819 S.W.2d 806, 820
(Tex.Cr.App.1991), cert. den'd, 
504 U.S. 974 (1992); McMillan v. State, 926 S.W.2d 809 (Tex.App. ‑
Eastland 1996, pet=n ref=d). We find that the State=s argument was not so inflammatory that any
prejudicial effect could not be removed by the trial court=s instruction to disregard.  Appellant=s fourth point of error in Cause No. 11-01-00167-CR and his third point
of error in Cause No. 11-01-00168-CR are overruled.








In his fifth point of error in Cause No. 11-01-00167-CR and
in his fourth point of error in Cause No. 11-01-00168-CR, appellant claims that
the trial court failed to limit the definitions of Aintentionally@ and Aknowingly@ to the relevant conduct elements of aggravated sexual
assault in the jury charge.  TEX. PENAL
CODE ANN. ' 6.03
(Vernon 1994) allows each element of an offense to be placed into one of three
categories:  (1) the nature of the
conduct; (2) the result of the conduct; or (3) circumstances surrounding the
conduct.  McQueen v. State, 781 S.W.2d
600, 603 (Tex.Cr.App.1989); Alvarado v. State, 704 S.W.2d 36, 38
(Tex.Cr.App.1985); Pitre v. State, 44 S.W.3d 616 (Tex.App. - Eastland 2001, pet=n ref=d).   The charge in
both cause numbers defined intentionally and knowingly as follows:

A person acts intentionally, or with intent, with respect
to the nature of his conduct [or] as to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result. 

 

A person acts knowingly, or with knowledge, with respect to
a result of his conduct when he is aware that his conduct is reasonably certain
to cause the result.  

 

Appellant contends in Cause No. 11-01-00167-CR that
aggravated sexual assault of a child under fourteen years of age is a Anature of conduct@ offense and that the trial court erred in defining
intentionally and knowingly in terms of Aresult of conduct.@  Appellant cites
Saldivar v. State, 783 S.W.2d 265 (Tex.App. - Corpus Christi 1989, no writ), in
which the court found that the offense of aggravated sexual assault of a child
is  result oriented only.  The court in Saldivar also noted that
sexual assault can be both result oriented and conduct oriented depending on
whether the A>specified
result=...occurs
in conjunction with either other >specified results,= >specific conduct,= or a circumstance of the victim.@  Saldivar v. State,
supra at 267; see Pitre v. State, supra. 
Appellant disagrees with the reasoning of Saldivar and argues
that the: 

[S]tatutory
prohibition of causing the penetration of the mouth of the child or causing the
penetration of the sexual organ of the child indicates a legislative intention
to punish conduct that is criminal by its very nature.

 








We find that aggravated sexual assault of a child involves
both result of conduct and nature of conduct elements. A person commits the
offense of aggravated sexual assault of a child if he  Acauses
the penetration of the anus or female sexual organ of a child by any means@ or if he Acauses the penetration of the mouth of a child by the
sexual organ of the actor.@  TEX. PENAL CODE
ANN. '
22.021(a)(B)(i) & (ii) (Vernon Supp. 2002).  To cause Athe penetration of the anus or female sexual organ@ involves a result of conduct.  Pitre v. State, supra at 620. 
ABy any
means@ or Aby the sexual organ of the actor@ involves a type or nature of conduct.  Because the aggravated sexual assault
involved a child, the result of conduct and nature of conduct elements were
criminalized; the State did not have to prove that it was without the child=s consent.  See
Saldivar v. State, supra.  The
application paragraph in Cause No. 11-01-00167-CR authorized the jury to
convict appellant if it found that he Adid intentionally or knowingly cause contact or penetration
of the mouth of [K.M.] with the sexual organ of [appellant]@ or that he Adid knowingly or intentionally cause the penetration of the
female sexual organ of [K.M.] by an object, to-wit:  the finger of [appellant].@  Thus, the
application paragraph allowed the jury to apply the appropriate portion of the
definitions to the facts.  The trial
court did not err in defining intentionally and knowingly in terms of result of
conduct in Cause No. 11-01-00167-CR.

Appellant argues in Cause No. 11-01-00168-CR that
aggravated sexual assault contains all three conduct elements and that the
definition of the correct mental state should be limited to the particular
element.  Appellant contends that an
appropriate jury charge would state:

The following definition applies to the mental state in causing the
penetration of the female sexual organ with the male sexual organ:  A person acts intentionally, or with intent,
with respect to the nature of his conduct or to a result of his conduct when it
is his conscious objective or desire to engage in the conduct or cause the
result.

 

A person acts knowingly, or with knowledge with respect to the
nature of his conduct when he is aware of the nature of his conduct.  A person acts knowingly or with knowledge
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.

 

The following definition applies to the mental state in causing
the penetration of the female sexual organ without the consent of the
complainant: A person acts knowingly, or with knowledge, with respect to the
circumstances surrounding his conduct when he is aware that the circumstances
exist.  

 

Appellant concedes that whether aggravated sexual assault
is a nature of conduct or result of conduct or combined offense has not been
settled by the Court of Criminal Appeals. 
See Cook v. State, 884 S.W.2d 485, 492‑94
(Tex.Cr.App.1994)(Maloney, J., concurring); 
Duhart v. State, 890 S.W.2d 187 (Tex.App. - Corpus Christi 1994, no pet=n).  Where an
offense is not clearly categorized with respect to the conduct elements
required, the trial court may submit the full statutory definitions of Aintentionally@ and Aknowingly@ because both definitions allow the jury to consider the
nature of the offender=s conduct or the results of his conduct.  Murray v. State, 804 S.W.2d 279, 281
(Tex.App. B Fort
Worth 1991, pet=n ref=d).








Appellant is correct that aggravated sexual assault does
involve all three conduct elements with Awithout her consent@ being Acircumstances surrounding his conduct.@  AWithout her consent,@ however, is what criminalizes the result of conduct and
nature of conduct elements.  Pitre v.
State, supra at 620.  The indictment
alleged that appellant knowingly and intentionally caused the penetration of
the female sexual organ of P.M. without her consent by means of his sexual
organ.  This allegation involved both
result of conduct and nature of conduct elements which were criminalized
because they were without her consent. 
Pitre v. State, supra.  The
application paragraph in the charge tracked the indictment.  The application paragraph authorized the
jury to convict appellant if it found that he Adid knowingly or intentionally cause the penetration of the
female sexual organ of [P.M.] without the consent of [P.M.] by means of an
object, to-wit:  the sexual organ of
[appellant].@ The
application paragraph allowed the jury to apply only the appropriate portions
of the definitions to the facts.  Pitre
v. State, supra.  The trial court did
not err in its definitions of intentionally and knowingly in Cause No.
11-01-00168-CR.

Moreover, appellant did not object to the jury charge;
therefore, any error must be so egregious that appellant did not receive a fair
and impartial trial.  Almanza v. State,
686 S.W.2d 157, 171 (Tex.Cr.App.1985). 
Even if the trial court somehow erred in its charge, we find that
appellant did not suffer egregious harm as a result of the court=s definitions of intentionally and knowingly.  Appellant=s fifth point of error in Cause No. 11-01-00167-CR and his
fourth point of error in Cause No. 11-01-00168-CR are overruled.

The judgments of the trial court are affirmed.

 

TERRY McCALL

JUSTICE

 

October 10, 2002

Publish.  See TEX.R.APP.P.
47.3(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.