In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00120-CR
_____

WILLIAM DEAN HALBIRT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3
Montgomery County, Texas
Trial Cause No. 11-267050

MEMORANDUM OPINION

A jury convicted appellant William Dean Halbirt of driving while intoxicated. The trial court assessed punishment at one hundred eighty days of confinement in the Montgomery County Jail, then suspended imposition of sentence, placed Halbirt on community supervision for one year, and assessed a $1500 fine. In four appellate issues, Halbirt challenges the trial court's (1) overruling of his objection to the State's revelation of the blood test results during opening statement, and the overruling of his motion for mistrial on that basis, (2)

1

prohibiting the defense from conducting voir dire examination of the nurse who drew Halbirt's blood, (3) admission of allegedly unreliable blood test results because the nurse who drew Halbirt's blood did not recall doing so, and (4) not holding a gatekeeper hearing concerning whether the forensic technician properly applied the techniques of gas chromatography.

ISSUE ONE

Halbirt argues the trial court erred by overruling his objection and denying his motion for mistrial when the State revealed the results of the blood test during opening statement. Prior to trial, the trial court had granted the request in Halbirt's motion in limine, which prohibited the State from mentioning scientific evidence before the trial court conducted a hearing to determine its admissibility. During the State's opening statement, the prosecutor stated, "[the officer took Halbirt] to Conroe Regional where . . . the defendant's blood is drawn. That blood is then sent to a lab and it just confirmed all of what the officer saw[:] that the defendant was intoxicated. The results[:] .131." The prosecutor later said during opening statement that "Everything confirmed what the officer -- from his investigation to the blood results and is going to lead to that one conclusion that . . . Halbirt was driving in a public place on public roads and he was intoxicated."

2

At the conclusion of the State's opening statement, defense counsel objected on several grounds, including the State's mention of the blood test results. The trial court overruled defense counsel's objection to the State's discussion of the blood test results. At the beginning of the second day of the trial, defense counsel moved for a mistrial, stating as follows:

> . . . Yesterday during opening argument, the motion in limine was violated and we jumped up and made our argument to you; but at that time, we didn't have case law and I brought case law today that says that a motion in limine applies to all [ph]ases of trial, opening argument, statements.
> And, basically, the argument is that the State intentionally did it. There's no doubt he did it intentionally. He knew what he was doing. I don't think he meant any ill intent by that but I think it was just inadvertent. Bottom line is the bell's been rung. Jury knows we've got a blood test of .13. Even an instruction can't cure that and get that out of their minds. I'm asking for a mistrial. . . .
> [B]ottom line is that the jury's been tainted now. We don't have a pure jury anymore. . . .
> [W]e would make a *Daubert* challenge before that testimony would ever be admitted and now it's in the jury box. . . .
> We're to that point where we've got a good jury but, unfortunately, evidence has been thrown in front of them that should have never been brought in at this time and I don't think it can be cured, so I'm asking for a mistrial.

The trial court overruled the motion and stated that it was doing so without prejudice to the defense re-urging the motion at a later time.

An appellate court reviews a trial court's decision to deny a mistrial for an abuse of discretion. *Berkley v. State,* 298 S.W.3d 712, 714 (Tex. App.—San

Antonio 2009, pet. ref'd) (citing *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). "A mistrial is a remedy of last resort." *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* (quoting *Hawkins*, 135 S.W.3d at 77).

The blood test results were admitted into evidence through the testimony of Stephanie Olofson, a forensic scientist at Sam Houston State University Regional Crime Laboratory. After Olofson testified concerning her educational background, defense counsel objected and requested a *Daubert* hearing. The trial court informed defense counsel that "it was already agreed that we would go up to the point of offering any opinion testimony and at that point in time, I would recess the jury[.]" Before Olofson testified concerning the blood test results, defense counsel took Olofson on voir dire. Prior to beginning his voir dire examination, the following exchange occurred between the trial court and defense counsel:

> [Defense counsel]: And, Judge, just to be clear what we're doing here. My understanding is . . . we're not going to have a *Daubert* hearing because . . . it was agreed we weren't going to challenge up to the point of putting the results in front of the jury.
> So now we're talking about, I guess, qualifying her as an expert in this area. Is that what we're doing?
> [The Court]: It's your hearing, [defense counsel].
> [Defense counsel]: Okay. I just want to make sure. I don't want to go outside of the bounds.

At the conclusion of the voir dire examination, defense counsel objected to Olofson's qualifications as an expert witness, stating that he objected "to her conclusion as an expert but, more specifically, testifying from that result and including it . . . as a valid result in this case." The trial court overruled the objection. Olofson then testified that according to the gas chromatograph analysis, the blood sample contained .131 grams of alcohol per a hundred milliliters of blood, and that the alcohol concentration for legal intoxication is 0.08 grams of alcohol per a hundred milliliters of blood.

An appellate court must disregard any non-constitutional error that does not affect the defendant's substantial rights. Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Montez v. State*, 975 S.W.2d 370, 373 (Tex. App.—Dallas 1998, no pet.).

The blood test results to which the State referred in its opening statement were admitted in evidence through Olofson's testimony. The trial court's charge to the jury included the following instruction: "Statements made by the lawyers are not evidence. . . . Evidence consists of the testimony of the witnesses and materials admitted into evidence." We presume the jury followed the trial court's

5

instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). The State's reference to the blood test results during opening statement does not require a new trial. *See Montez*, 975 S.W.2d at 373; *see also* Tex. R. App. P. 44.2(b). We overrule issue one.

ISSUES TWO AND THREE

In his second issue, Halbirt contends the trial court erred by prohibiting him from conducting a voir dire examination of the nurse who drew Halbirt's blood. In his third issue, Halbirt argues that because the nurse who drew Halbirt's blood did not recall doing so, the trial court erred by admitting the blood test because the State did not prove that the results were reliable. We address issues two and three together.

Pamela Donaldson testified that she was working as an emergency room nurse at Conroe Regional Hospital when Halbirt was brought to the hospital. Donaldson explained that she has drawn blood on many occasions as part of her job duties at the hospital and the standard procedure for drawing a person's blood is to draw the blood from the veins. According to Donaldson, when drawing blood, she cleans the skin with Betadine, inserts a needle into a vein, and draws blood out. Donaldson explained that Betadine is used because it does not contain alcohol, so it cleans the skin without allowing alcohol to enter the blood sample.

6

Halbirt complains that he was not allowed to take Donaldson on voir dire. Although the trial court denied his first request to take Donaldson on voir dire, the trial court ultimately permitted Halbirt to do so when he lodged another objection. During the voir dire examination, Donaldson testified that she did not specifically remember taking Halbirt's blood, but her signature is on the tube. Donaldson testified, "I do not recall that man, but I do not recall most people I draw blood from."

Halbirt cites Texas Rule of Evidence 702 as support for his argument in issues two and three. *See* Tex. R. Evid. 702. Rule 702 provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *Id*. At the conclusion of the voir dire examination, defense counsel objected as follows:

> The third prong of the *Daubert* case . . . [is] unless the witness can positively say they applied the procedures properly in this specific case, they're not allowed to testify. . . . [H]er testimony [is] irrelevant with regards to this case unless she can positively say that she properly applied the techniques in this case.

The trial court overruled the objection.

As the United States Supreme Court explained in *Daubert*, "[t]he subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993). "[T]o qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Id.* at 590.

Donaldson testified concerning the procedure she normally uses for drawing blood for analysis, and that her signature is on the Halbirt tube. Donaldson was not asked for specific opinions based upon scientific, technical, or other specialized knowledge. *See id.*; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); *see also* Tex. R. Evid. 702. Her testimony was that of a fact witness identifying the blood tested as Halbirt's and the method of collection, rather than that of an expert addressing scientific knowledge outside a juror's common experience. The trial court could reasonably conclude that, for the purpose offered, her testimony was relevant. The jury could determine the credibility of her testimony and the weight to be given it. The authorities cited by Halbirt as support for issues two and three are inapposite. We overrule issues two and three.

## ISSUE FOUR

In his fourth issue, Halbirt argues the trial court erred by not holding a gatekeeper hearing concerning whether Olofson properly applied the techniques of gas chromatography. But the trial court afforded Halbirt the opportunity to take Olofson on voir dire before ruling on the admissibility of her testimony or allowing her to present expert testimony. *See* Tex. R. Evid. 705(b); *see also Massey v. State*, 933 S.W.2d 141, 152 (Tex. Crim. App. 1996); *Kelly*, 824 S.W.2d at 573.

Halbirt also argues in his briefing of issue four that Olofson's testimony was unreliable because she allegedly testified during cross-examination that the gas chromatograph received maintenance before the analysis of Halbirt's blood and was not properly validated after the maintenance. Olofson testified that the machine was validated and calibrated in April 2010, and that the equipment was used for evidentiary samples sometime in November 2010. According to Olofson, the first maintenance was performed on the gas chromatograph in May 2010, and she explained that every time a "sample run" is performed, that batch is "a reverification of the method. So that first run afterward would be considered a reverification of the instrument." Olofson testified that if the proficiency test data came back correctly or within specifications, the machine is functioning as it should. Issue four is overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on September 19, 2013
Opinion Delivered October 16, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.